UNITED STATES of America,
Appellee,

v.

Morris H. SWITZER, Defendant-
Appellant.

No. 124, Docket 24795.

United States Court of Appeals
Second Circuit.

Argued Nov. 14, 1957.

Decided Jan. 28, 1958.

140.

Morris H. Switzer, New York City, appellant, pro se.

Gabriel B. Schwartz, Sp. Asst. to U. S. Atty., S. D. N. Y., New York City (Paul W. Williams, U. S. Atty., New York City, on the brief), for appellee.

Before CLARK, Chief Judge, MOORE, Circuit Judge, and LEIBELL, District Judge.

CLARK, Chief Judge.

Defendant, an attorney, appeals from convictions of the crimes of concealing assets from a trustee in bankruptcy, 18 U.S.C. § 152, and conspiring to transfer the assets of one corporation to another in contemplation of bankruptcy and with intent to defeat the National Bankruptcy Act, 18 U.S.C. § 371 and 18 U.S.C. § 152. He also appeals from an order denying his motion for a new trial on the ground of newly discovered evidence.

There was evidence before the jury that Switzer's client, a corporation called Berkeley Jewelers, Inc., borrowed substantial sums from money lenders who also were represented by Switzer. The loans were necessary because the corporation was incurring large losses in its expanded "discount" operations. In December 1949, Switzer, who was well aware of the corporation's financial deterioration, proposed a plan whereby the

bulk of its inventory would be transferred to a new corporation to be managed for the benefit of those creditors who were also Switzer's clients. The new corporation was then to continue the profitable portion of the old corporation's business. The persons involved agreed to the plan, and Switzer prepared confessions of judgment to the favored creditors. Prior to an arranged judicial sale much of the valuable inventory was removed from the old corporation's premises; and consequently at the sale, conducted by a "friendly" city marshal, one of the conspirators was successful in purchasing its property at a low figure. The valuable inventory previously removed was then sold for the benefit of the favored creditors and Switzer; and the property purchased at the sale went to the newly organized corporation, which continued to pay the old corporation's debt to one of the creditors with whom Switzer was associated.

A little over one month later the old corporation, still represented by Switzer, consented to an adjudication of bankruptcy. After the appointment of a trustee, Switzer found out that some jewelry remained in the company's safe. He thereupon removed the jewelry and refused to return it to the trustee, although the trustee made demand for it. A portion of the jewelry was recovered upon his arrest.

Switzer was tried upon the second and third counts of an indictment, the only ones directed against him. Of these, Count 2 charged him with concealing from the trustee the jewelry he removed from the bankrupt's safe and refused to return. And Count 3 charged him with conspiring to transfer the old corporation's assets with intent to defeat the Bankruptcy Act. This relates to the whole scheme to remove the old corporation's assets from the reach of other than the favored creditors.

 Switzer raises a number of points on appeal. He first asserts that the conspiracy count of the indictment was defective. It alleged a conspiracy to transfer the bankrupt's property illegally. It made no reference to concealment. This, defendant claims, rendered the indictment fatally defective, despite the fact that a conspiracy indictment need not describe the substantive crime with the particularity of an indictment for that offense. Wong Tai v. United States, 273 U.S. 77, 47 S.Ct. 300, 71 L. Ed. 545. The argument is founded on the decision in United States v. Posner, D.C.S.D.N.Y., 3 F.Supp. 252, wherein an allegation of concealment was held to be an essential element, even though the statute used the words "transfer" and "conceal" in the alternative. The court reasoned that paragraph 1 of 18 U.S.C. § 152 must be read in conjunction with paragraph 6. Paragraph 1 prohibits a person contemplating bankruptcy from concealing his assets, but nowhere is he prohibited from transferring them. Since a principal is not prohibited from transferring assets, an agent ought not to be so prohibited, for Congress would not have intended to apply a more stringent requirement to agents than to principals. Therefore, that court concluded that paragraph 6 must mean that an agent must conceal, or conceal and transfer, before criminal liability attaches.

This argument has been considered and rejected by the Courts of Appeals of the Seventh and Tenth Circuits. These decisions reason that the intent of Congress was to prevent the defeat of the bankruptcy statute and that this intent is best applied by adopting a literal reading of the statute. United States v. Shapiro, 7 Cir., 101 F.2d 375, certiorari denied Shapiro v. United States, 306 U.S. 657, 59 S.Ct. 774, 83 L.Ed. 1054; Viles v. United States, 10 Cir., 193 F.2d 776, certiorari denied 343 U.S. 915, 72 S.Ct. 650, 96 L.Ed. 1330. Although the language of the statute in question has changed, these three cases and the instant case all interpret the language of the statute as it now reads.

It is clear that the latter interpretation should be followed because the actual intent of Congress is best served by prohibiting either transfer or concealment, for either one may defeat the purpose of

the Act. The difference between paragraphs 1 and 6 is more apparent than real, for a fraudulent transfer by a principal could be charged as a fraudulent concealment and the evidence of transfer would justify a finding of concealment.

■ Defendant also claims that the government failed to establish a *prima facie* case. He urges, with respect to Count 2, that it never proved that there was a trustee in bankruptcy from whom defendant could conspire to transfer property or that the property in question was the property of the bankrupt estate; and with respect to the conspiracy count, he contends that the government failed to prove that the transfer was fraudulent. These arguments are without merit, for the government proved that a trustee was elected by the creditors, that his appointment was approved by the referee, and that the amount of his bond was fixed. The trustee then testified that he, in fact, was the trustee and acted as such. Still later Switzer testified that there was a trustee. We believe the government adequately established this fact. In addition, there was no dispute that the jewelry in question was in the possession of the bankrupt, specifically in its safe. It is immaterial whether this property was owned by the bankrupt, bailed to the bankrupt, or previously sold by the bankrupt and awaiting delivery; for in any of these events the bankrupt had a property interest in the jewelry, and for purposes of the statute, 18 U.S.C. § 152, it was property of the bankrupt corporation. Defendant's last contention is based on his view of the evidence. There is little doubt but that from the testimony at trial (which included the testimony of Switzer's coconspirators on behalf of the government) the jury could have concluded that Switzer, with intent to defeat the bankruptcy law, knowingly and fraudulently transferred property of the old corporation to the new corporation and to the favored creditors in violation of 18 U.S.C. § 152.

■ Switzer claims that numerous errors denied him a fair trial. He alleges that three errors occurred during the presentation of the prosecution's case. The first concerns evidence which was presented to show not only that defendant conspired to transfer property, but also that he actually transferred it. Switzer claims that this is evidence of an independent crime not charged in the indictment and also constituted a variance between pleading and proof so as to expose him to double jeopardy. But the evidence was clearly admissible to show his intent and the absence of mistake, both of which had been raised by the defense. Switzer was not indicted for the crime of fraudulent transfer; and he cannot protest against a future prosecution for that offense. The pleading alleged conspiracy to transfer and the evidence established that conspiracy.

■ Switzer next claims that he was prejudiced by testimony of prosecution witnesses that he told them to testify falsely when appearing before the Referee in Bankruptcy or the Grand Jury. He contends that this was improper, because it permitted the government to impeach its own witnesses and because the questions called for conclusions. These questions were proper, as they were relevant to establish Switzer's criminal intent and were not asked for the purposes of impeachment. One of the witnesses was allowed to summarize his conversation with Switzer because he could not remember the precise questions, but only the gist of the conversation. But the other witnesses remembered the precise statements of the defendant, and it was only after the prosecutor had tried diligently to bring out the exact conversation that the court permitted the first witness to summarize what transpired. As for the objection that the question was double, and therefore the answer was unclear, the defense had opportunity to clarify the point on cross-examination.

■ Switzer's third complaint concerns his absence from the courtroom during the trial. He left the courtroom for about two minutes while Faskow,

president of the bankrupt and a coconspirator, testified that he told defendant of the company's precarious condition in December 1949—the month in which Switzer proposed the elaborate plan to transfer the company's assets. But there is no irregularity here, for Switzer was absent at his own request and the judge continued only after obtaining express permission from defense counsel, who heard Faskow's answer and developed it on cross-examination. In addition, other witnesses, whom defendant did hear, testified that he had told them of the insolvency in December 1949. Furthermore, there was no objection raised at the trial and Switzer was fully aware that the facts had been presented to the jury. See Parker v. United States, 4 Cir., 184 F.2d 488.

■■■ Switzer alleges that a number of errors occurred during the presentation of his case. He claims that the trial court so repeatedly rebuked him and his counsel that it must have had prejudicial effect on the jury. But this must be considered in proper perspective. The trial lasted eleven days, and there were some 1,470 pages of transcript. The jury had ample opportunity to observe defendant while he was on the witness stand, for his testimony accounted for 399 pages of transcript. Repeatedly he was evasive and unresponsive, and the trial judge was obliged to take an active part to keep the proceedings in proper channels. Most of the judge's questions were directed toward that end. Moreover, he cautioned the jury that his instructions to Switzer had nothing to do with Switzer's guilt or innocence.

■■■ Switzer contends that it was error to allow the prosecutor to make use of his pre-trial statement during cross-examination and then refuse a defense motion to admit the document as a whole, even though many parts were irrelevant, self-serving, and did not rehabilitate him. But the defense may not introduce any statement of defendant simply because the prosecutor questioned defendant concerning its contents. The statement, like any other evidence, must be competent before it will be considered.

■■■ Switzer lists some 920 questions which he claims the court asked to his prejudice. He urges that the extensive examination by the court showed that the court adopted the role of prosecutor and further that the examination must have created an impression in the minds of the jury that the court disbelieved Switzer's testimony. A trial judge has a duty to elicit facts necessary to a clear presentation of the issues, Pariser v. City of New York, 2 Cir., 146 F.2d 431; but he must maintain impartiality and a courtroom atmosphere in which guilt or innocence may be solely and fairly tested. United States v. Brandt, 2 Cir., 196 F.2d 653, 656. In the latter case we held that the 900 questions asked by the trial judge denied the accused a fair trial because they "were not of the form to elicit information or direct the trial procedure into proper channels." Moreover, they "cut into the presumption of innocence." There, the trial court actively cross-examined several witnesses, noticeably the defendant, even during direct examination; and the questioning appeared mainly to underline inconsistencies in their positions or to elicit admissions bearing on their credibility. Under the Brandt case whether a given question or line of questioning is designed primarily to clarify issues and elicit facts or to underline inconsistencies and elicit admissions must be decided in the light of the whole trial, for each question is usually not objectionable on its face.

■■■ Here, as the voluminous transcript shows upon examination, most of the trial judge's questions were designed to clarify the testimony and point out its relation to former testimony. The court uniformly allowed ample time for the explanation of any resulting inconsistencies and avoided personalities whenever possible. Moreover, the court did not address itself to the credibility of any witness, nor did it remark on the weight to be given to any particular

piece of evidence. We see no impropriety in the questions.

■ Switzer alleges a number of errors with regard to the summations and instructions. The Assistant United States Attorney in his summation read part of Switzer's testimony given before the Grand Jury. Switzer previously had been confronted with it on cross-examination; and his counsel stipulated that the Grand Jury stenographer, if called as a witness, would testify to the accuracy of the excerpts. Thus there was no error in allowing the prosecutor to use that part of the minutes in the summation.

■ Switzer claims that it was error not to call him into the robing room while the court ruled on requests to charge. But Rule 30 of the Federal Rules of Criminal Procedure, which provides that parties may file written requests for instructions and that the court shall inform counsel of its proposed action on the requests, does not require the court to inform a defendant represented by counsel of its rulings. Nor does it require that the defendant be present while requests are made. Moreover, this defendant certainly was not prejudiced, because he had an opportunity to propose, and did propose, additional instructions later in open court, after which he indicated that the instructions were satisfactory to him. Neither Ah Fook Chang v. United States, 9 Cir., 91 F.2d 805, nor Shields v. United States, 273 U.S. 583, 47 S.Ct. 478, 71 L.Ed. 787, is applicable in this case as Switzer contends. In those cases the court gave additional instructions to the jury after it had retired and out of the presence of the defendant and his counsel. Thus the defense had no opportunity to correct any errors. Here, however, the discussion took place not between the court and the jury, but between the court and counsel; and there was ample opportunity to correct any error and raise objection.

■ Switzer alleges numerous errors in the charge despite the fact that he took no exceptions and his counsel accepted the charge as satisfactory. He contends that the court gave a one-sided view of the evidence. But the record shows that the court was summarizing uncontroverted evidence which, unfortunately for Switzer, was hostile to him. This was hardly prejudicial to any of his rights. Switzer also claims that the instructions allowed the jury to find him guilty of the conspiracy count if it believed that he transferred or concealed the property in question, and that the court failed to instruct the jury that it must find that the object of the conspiracy was the object alleged in the indictment. But this contention is without merit, because the judge did charge that, in order to convict, the jurors must find that the "conspirators * * * came to a mutual understanding to accomplish an unlawful purpose" which he had already defined as knowingly and fraudulently transferring or concealing property of a bankrupt with intent to defeat the bankruptcy law. The court then specified the necessary elements in this case by stating that, in order to find Switzer guilty, the jury must find "that he conspired with others in contemplation of bankruptcy knowingly to transfer property of the corporation." This general instruction, which succinctly listed the elements of the offense, was sufficient, especially as Switzer made no objection. United States v. Capitol Meats, Inc., 2 Cir., 166 F.2d 537, 539, certiorari denied Capitol Meats, Inc., v. United States, 334 U.S. 812, 68 S.Ct. 1018, 92 L.Ed. 1743.

■ Lastly Switzer urges that the trial court should have granted a new trial on the basis of newly discovered evidence. After trial the defendant discovered among his files a letter over five years old from one of the prosecution witnesses which tended to indicate that the witness may have been confused as to certain testimony concerning certain dates and property. Switzer also learned that another prosecution witness had made a pre-trial statement which differed slightly from the witness' testimony at the trial. Even if this evidence is con-

sidered as newly discovered, its only value is to impeach the witnesses in question. This is not a sufficient reason to grant a new trial. United States v. Hiss, D.C.S.D.N.Y., 107 F.Supp. 128, affirmed 2 Cir., 201 F.2d 372, certiorari denied Hiss v. United States, 345 U.S. 942, 73 S.Ct. 830, 97 L.Ed. 1368.

Switzer's other allegations have been considered and rejected. They are too insubstantial to warrant discussion.

Conviction affirmed.