UNITED STATES of America, Appellee,

v.

Santiago DE FILLO and Viola Gonzales, Appellants.

No. 226, Docket 24787.

United States Court of Appeals Second Circuit.

Argued Feb. 7, 1958.

Decided July 29, 1958.

---

Nicholas Atlas, New York City, for appellants.

William S. Lynch, Asst. U. S. Atty., Southern District of New York, New York City (Paul W. Williams, U. S. Atty., Mark F. Hughes, Asst. U. S. Atty., Southern District of New York, New York City, on the brief), for appellee.

Before MEDINA, WATERMAN and MOORE, Circuit Judges.

MOORE, Circuit Judge.

The defendants Santiago DeFillo and Viola Gonzales appeal from a judgment of conviction upon a jury verdict of the offense of conspiring to violate the United States narcotics laws (21 U.S.C.A. §§ 173, 174; 18 U.S.C.A. § 371). The defendant DeFillo, as a second narcotics offender, received a sentence of nine years, the defendant Viola Gonzales three years.

The indictment, in substance, charged defendants with conspiring with Frank Rich and Michael Botto, named as co-conspirators but not indicted, and with others unknown, to sell narcotics. The overt acts consist primarily of the receipt of payment by DeFillo and the delivery of heroin by Gonzales between August and November 1955.

The appellants concede that, if accepted by the jury, the testimony of Botto as to a conspiracy between Botto, Rich, DeFillo and Gonzales to deal in narcotics was sufficient to sustain the conviction and that each conspirator played his role in the sale of drugs by Gonzales and DeFillo to Botto and Rich. Although each might have been engaged in separate activities, this cooperative endeavor is the essence of conspiracy.

In 1955 and in early 1956 DeFillo was engaged in the business of selling narcotics, and Gonzales, who for several years had been living with DeFillo, not only knew of this venture but was an active participant in the distribution system. Considering this close relationship alone, the inference that Gonzales was unaware of DeFillo's criminal transactions could be drawn only by ignoring the realities of her personal association with him. Coupled with her knowledge (actual and by inference) of DeFillo's criminal activities, the testimony of Botto showed that Gonzales was a participant in DeFillo's illegal scheme.

Appellants base their claims of error upon: (1) an alleged variance between the indictment and the proof; (2) the reception of inadmissible evidence; (3) the court's charge; and (4) a failure to have a fair trial.

### 1. The Alleged Variance

The indictment contained but one count. During the trial there was testimony of two narcotics sales by DeFillo to Edward Flores. The narcotics sold to Flores were not delivered by Gonzales and there was no proof that Flores knew of the transactions between DeFillo and Gonzales and others. From this premise appellant Gonzales argues that such purchases constituted a separate conspiracy and that proof of these sales amounted to a material variance from the charge against her, which was highly prejudicial.

From August 1955 to November 1955 Botto and Rich, his partner in a narcotics venture, repeatedly called upon DeFillo on West 51st Street, in Manhattan, to make a series of heroin purchases which they then diluted and sold to addicts on the street. On each occasion DeFillo would direct them to proceed to an apartment house on West 87th Street where he was living with Gonzales. There they would meet Gonzales in the hallway of the house and she would deliver the heroin in a glassine container.

Concerning the two sales to Flores, testimony as to which Gonzales claims to have been erroneously received against her, both deliveries were made by DeFillo himself. The first was consummated on a street only a block away from

the 87th Street apartment and occurred during the same time period in which Gonzales, acting on DeFillo's orders, was making heroin deliveries to Botto and Rich, namely November 1955. The second sale to Flores was arranged by De-Fillo in the same spot where he had dealt with Botto and Rich, i. e., West 51st Street, and the delivery was effected in a mid-town bar in February 1956.

That Gonzales may not have known of these two particular deliveries does not establish a separate conspiracy. There is no requirement that each member know all of the detailed ramifications of the conspiracy or participate in every sale. (United States v. Carminati, 2 Cir., 1957, 247 F.2d 640, 643; Poliafico v. United States, 6 Cir., 1956, 237 F.2d 97, 104, certiorari denied, 1957, 352 U.S. 1025, 77 S.Ct. 590, 1 L.Ed.2d 597; United States v. Tramaglino, 2 Cir., 1952, 197 F.2d 928, 930, certiorari denied, 1952, 344 U.S. 864, 73 S.Ct. 105, 97 L.Ed. 670; United States v. Bruno, 2 Cir., 1939, 105 F.2d 921, 922.)

The fact that there was some division of labor in this illegal scheme is hardly unusual and does not turn the single conspiracy headed by DeFillo into a series of conspiracies. The various means of delivery were traced to one common source and guiding hand—De-Fillo.

Whether or not Flores was a member of the conspiracy to sell heroin is immaterial. Appellant argues, in effect, that in order for the Flores sales to be admissible, Flores' participation in the narcotics conspiracy had to be established. This is not the law. All that was needed to be shown was that DeFillo's sales were in furtherance of the narcotics conspiracy. This requirement was met. If a Mr. X had witnessed a sale of narcotics by DeFillo to an unknown person, his testimony to that effect would have been competent evidence against DeFillo, and also against Gonzales, once her participation in the conspiracy had been established. The fact that such testimony came from vendees does not make it inadmissible. Gonzales was found by the jury, upon evidence conceded to be sufficient if believed, to have been a member of the conspiracy, and the credibility of the witnesses testifying against her was solely for the jury to determine.

Gonzales knew that she was associated in the sale of heroin and she knew that she was making deliveries upon orders given to DeFillo. Once her participation in the conspiracy was established all sales made by DeFillo whether to Flores or anyone else were clearly admissible.[1]

As to establishing her participation therein by competent proof the trial court was careful to safeguard Gonzales' rights. It charged the jury that "The alleged participation by a defendant in a conspiracy cannot be established by the acts or declarations of any alleged co-conspirators done or made in the defendant's absence. A defendant's connection with the conspiracy must be established by independent proof based upon the reasonable inferences to be drawn from such defendant's own action, his or her own conduct, his or her own statements or declarations, his or her own connection with the actions and conduct of the alleged conspirators." This instruction to the jury was adequate to protect Gonzales'

1. Even assuming that the proof disclosed two separate conspiracies, there has been no showing that "there has been such a variance as to 'affect the substantial rights' of the accused" (Berger v. United States, 1935, 295 U.S. 78, 82, 55 S.Ct. 629, 630, 79 L.Ed. 1314). The indictment adequately disclosed the charges which Gonzales had to meet. "If more than one conspiracy was proved, of at least one of which the appellant [here Gonzales] was guilty, it is clear that there was no variance affecting [her] substantial rights" (Jolley v. United States, 5 Cir., 1956, 232 F.2d 83, 88). See also United States v. Cioffi, 2 Cir., 1957, 242 F.2d 473, certiorari denied, 1957, 353 U. S. 975, 77 S.Ct. 1060, 1 L.Ed.2d 1137; United States v. D'Ercole, 2 Cir., 1955, 225 F.2d 611, 614.

rights.[2] It is fundamental to the jury system that they will be presumed to follow the court's charge and to limit their consideration to the evidence which may be properly applied against each defendant where more than one defendant is on trial (Delli Paoli v. United States, 352 U.S. 232, 239–241, 77 S.Ct. 294, 1 L.Ed.2d 278; United States v. Falcone, 2 Cir., 1940, 109 F.2d 579, 582, affirmed on other grounds, 311 U. S. 205, 61 S.Ct. 204, 85 L.Ed. 128).

### 2. The Reception of Inadmissible Evidence

■ Appellant Gonzales assumes that her conviction was brought about by the introduction of testimony of the transactions between DeFillo and Flores and testimony relating to meetings between DeFillo, Botto and Giorgio in October 1956. The testimony of Flores and of Botto and Giorgio was clearly admissible against DeFillo. In almost every case in which there are multiple defendants (and this is particularly true in narcotics cases) there will be testimony which is admissible against one or more defendants and inadmissible against others. Unless a rule is to be formulated that there must be a separate trial of every individual defendant, constitutional safeguards must continue to rest upon the assumption that the court will properly instruct the jury as to such evidence and that the jury will follow such instructions. Gonzales' argument that the jury may have been misled is based upon an assumption that they did not follow the court's instructions. The clarity of the charge affords no basis for any such premise.

### 3. The Court's Charge

■ Appellants complain that the trial court failed to charge on the subject of entrapment. No request was made during the trial for such an in-

struction. Nor would such a charge have been supported by the evidence. In any event, this alleged error cannot be urged as a ground for reversal (United States v. Moia, 2 Cir., 1958, 251 F.2d 255; United States v. Sherman, 2 Cir., 1948, 171 F.2d 619).

### 4. The Failure to Receive a Fair Trial

Finally, appellants urge that they did not receive a fair trial because the trial court unduly participated in the interrogation of witnesses and that the prosecutor's summation was prejudicial and improper.

■ These arguments frequently have been advanced recently in criminal cases. The test is not the number of questions which the trial court asks. Appellants' arguments do not gain strength from the customary statistical resume of numbers of questions. If all the questions are elicited for purposes recognized as proper either on direct or cross-examination prejudice does not arise merely because the questions are asked by the court. (United States v. Switzer, 2 Cir., 1958, 252 F.2d 139, 144; United States v. Allied Stevedoring Corp., 2 Cir., 1957, 241 F.2d 925, 934; United States v. Rosenberg, 2 Cir., 1952, 195 F.2d 583, 594.)

■ The trial court is not without responsibility in the courtroom. Between the court, the prosecutor and the defense counsel the ultimate goal of the trial should be the development of the facts so that the jury can pass upon the merits of the case. It may well be that questions of the court of the witnesses Powers and Santana sought to develop the background and history of each witness but the subject matter of the examination was admissible to aid in determining credibility. There is no basis for accepting as a proposition of law a

2. Although in our opinion such a charge was adequate, the trial court went even further and specifically called to the jury's attention that "The testimony of Botto about what DeFillo told him in defendant Gonzales' absence may not be considered by you in determining whether she was a member of the conspiracy. Her participation must be found in Botto's testimony concerning his direct dealings with her, if you believe him."

principle that a question asked by the court within this field might tend to destroy the credibility of the witness whereas the same question asked by counsel would not.

 Likewise as to the summation by the prosecutor. The inference that the prosecutor sought to draw from the letters which passed between DeFillo and Gonzales was proper. In view of the testimony that both defendants had trafficked in narcotics the jury was entitled to infer that the shipment of "suits" from New York to Puerto Rico "at the rate of $600 each suit" which could be sold for double in Puerto Rico might well not have referred to suits of clothing. Even in these days of spiraling prices this price seems somewhat high for suits. The defendants then claimed that suits meant "cars" but the proof showed there was little substance to this interpretation because the defendants had no trouble or hesitation in using the word "cars" in their correspondence. Counsel for both prosecution and defense are entitled to argue the inferences to be drawn from the evidence. The responsibility for resolving the ultimate conclusions from these arguments rests upon the jury. United States v. Private Brands, Inc., 2 Cir., 1957, 250 F.2d 554; United States v. Nunan, 2 Cir., 1956, 236 F.2d 576, 590–591; United States v. Angelet, 2 Cir., 1956, 231 F.2d 190.

 This leaves merely a statement by the prosecutor that the testimony of the witness Powers was "bought" by DeFillo. This remark undoubtedly should not have been made but no objection was made at the time by defense counsel and there is no sound basis for believing that this remark could have been of any particular significance against the overwhelming weight of testimony which established that the defendants were definitely in the narcotics trade and violating the narcotics laws.

The defendants received a fair trial and the judgments of conviction are affirmed.