UNITED STATES of America,
Plaintiff-Appellee,

v.

Robert Hall LEWIS, Jr., Defendant-Appellant.

No. 15699.

United States Court of Appeals
Sixth Circuit.

Nov. 20, 1964.

James C. Britt, Columbus, Ohio, for appellant.

Robert A. Bell, Columbus, Ohio (Joseph P. Kinneary, U. S. Atty., Columbus, Ohio, on the brief), for appellee.

Before CECIL, O'SULLIVAN and PHILLIPS, Circuit Judges.

HARRY PHILLIPS, Circuit Judge.

The Town and Country Branch of the Ohio Federal Savings and Loan Association, Franklin County, Ohio, was robbed of $35,000 on December 14, 1962. Charles Edward Bebout entered a plea of guilty to committing this robbery and is now serving a prison sentence.

Robert Hall Lewis, Jr., defendant-appellant in the present case, was found guilty by a jury of receiving a part of the proceeds of this robbery in violation of 18 U.S.C. § 2113(c) [1] and was sentenced to a maximum prison term of ten years.

---

1. "(c) Whoever receives, possesses, conceals, stores, barters, sells, or disposes of, any property or money or other thing of value knowing the same to have been taken from a bank, or a savings and loan association, in violation of subsection (b) of this section shall be subject to the punishment provided by said subsection (b) for the taker."

Bebout testified as a prosecution witness against defendant. He and other witnesses testified before the jury to the following effect: Bebout and defendant have known each other since 1952. In 1954 Bebout lived in a house in Columbus, Ohio, which he rented from defendant's mother. In October 1962 Bebout returned to Columbus, contacted defendant and began to discuss with him the robbing of a bank. Bebout robbed the savings and loan association on Friday December 14, 1962, with the knowledge of defendant, and used defendant's 1959 Cadillac as a getaway car. After the robbery the two met in the Columbus Public Library, then proceeded to a local motel and counted the money. On this occasion defendant received $300.00 of the stolen money from Bebout. On the following day they met again at the motel bar, had a drink, then went to Bebout's room, where defendant received from Bebout $6,700 in additional money as his share of the proceeds from the robbery, carrying it away in a tan Samson attache case. On Sunday December 16, the two met again, placed the remainder of the stolen money in a box and gift wrapped it as a Christmas package, with "Mother" written on the outside, and placed the package in the back seat of defendant's Cadillac. Defendant thereupon drove Bebout to Wheeling, West Virginia, where they registered at a motor inn. Bebout was arrested December 26 in Chicago.

After defendant returned to Columbus from Wheeling on December 17, and during the period that he was being interviewed by F.B.I. agents, he took a gift-wrapped package to the home of a friend, Charlotte See, and asked her to keep it for him. This package was stolen from the home of Miss See by one James Long, who discovered that it contained about $5,000 in currency in denominations of twenties, tens, fives and ones. After Miss See had informed the defendant that the package had been stolen, she received a series of telephone calls from unidentified parties demanding that the package be recovered. In one of the calls she was instructed to deliver the package, when returned, to a local attorney. Long spent part of the stolen money on a western trip, but Miss See was successful in recovering from him approximately $1,100. Miss See had the package containing this money delivered to the designated Columbus attorney, in accordance with the telephone instructions she had received. The attorney placed the package in a safe at a Columbus motel. Later he was contacted by F.B.I. agents and turned the money over to them. The F.B.I. checked the currency in this package against a list of serial numbers of the stolen money, and found that there was "bait" money among the bills, identified as having been stolen from the savings and loan association on December 14.

The case was argued and submitted to this court on June 4, 1964. Shortly prior to this hearing defendant-appellant had filed a motion in this court to remand the case for a new trial on grounds of newly discovered evidence, or in the alternative for a continuance until such time as an investigation could be made of the affidavit of Bebout thereto attached, which was the alleged newly discovered evidence upon which the motion was based. In this affidavit Bebout stated under oath as follows:

> "Affiant further says that all statements and testimony given against Robert Hall Lewis, Jr., implicating the said Lewis in a robbery of the Town and Country branch of the Ohio Federal Savings and Loan Association, on or about December 14, 1962, are and were false in every respect. Affiant further says that such crime was committed by the said affiant and that at no time were said facts disclosed to the said Robert Hall Lewis, Jr., nor did affiant ever turn over to the said Robert Hall Lewis, Jr., any of the proceeds of said robbery."

This court ordered that consideration and decision of this appeal be held in abeyance pending the filing of a motion for a new trial in the District Court and until the trial judge has certified to this court whether he would grant a motion

for a new trial or deny it if the case be remanded to the District Court for a ruling on the motion.

On September 3, 1964, the District Court conducted a hearing on the motion for a new trial and heard additional testimony from Bebout in which this witness recanted his previous testimony implicating defendant in the robbery. The District Judge thereupon overruled the motion for a new trial and his action has been certified to this court. The transcript of the proceedings at the hearing on the motion for a new trial and supplemental briefs also have been filed with this court.

Only three of the questions raised on the appeal require discussion: (1) Did the trial judge err in denying defendant's motion for a new trial on grounds of the newly discovered evidence set forth in Bebout's affidavit? (2) Did the trial judge commit prejudicial and reversible error in interrogating witnesses? and (3) Was the testimony sufficient to permit the issue of defendant's guilt or innocence to be determined by the jury?

### 1) Motion For a New Trial

The trial court may grant a new trial to a defendant "if required in the interest of justice." Rule 33, Federal Rules of Criminal Procedure.

As said by this court in Winer v. United States, 228 F.2d 944, 952 (C.A. 6), cert. denied, 351 U.S. 906, 76 S.Ct. 695, 100 L.Ed. 1442:

"The granting or refusing of a new trial upon newly discovered evidence of an impeaching character, including the recantation of a witness, rests in the sound discretion of the trial court; and a new trial will not be granted on the grounds of newly discovered evidence, unless such evidence is of a nature that, on a new trial, it would probably bring about a different result. It is for the trial judge to determine the probable effect it would have in changing the result of another trial; and in the absence of a clear

showing of abuse of discretion, his action must stand."

To like effect see United States v. Barnhill, 305 F.2d 164 (C.A. 6), cert. denied, 371 U.S. 865, 83 S.Ct. 126, 9 L.Ed.2d 102; Ashe v. United States, 288 F.2d 725, 733 (C.A. 6).

In United States v. Johnson, 327 U.S. 106, 111, 66 S.Ct. 464, 466, 90 L.Ed. 562, the Supreme Court said:

"[W]e think it important for the orderly administration of criminal justice that findings on conflicting evidence by trial courts on motions for new trial based on newly discovered evidence remain undisturbed except for most extraordinary circumstances, * * *."

In United States v. Troche, 213 F.2d 401, 403 (C.A. 2), the Court said:

"Where the newly discovered evidence consists of recantation of testimony given at the trial, such recantation is 'looked upon with the utmost suspicion,' as this court pointed out in Harrison v. United States, 2 Cir., 7 F.2d 259, 262. The motion should be granted only when 'the court is reasonably well satisfied that the testimony given by a material witness is false,' * * *."

In this case the trial judge heard the testimony of Bebout at the trial and again at the hearing on the motion for a new trial. He was exceptionally well qualified to pass upon the truth or falsity of Bebout's affidavit. At the close of the latter hearing, he made an affirmative finding as follows: "This Court is of the opinion, and concludes, under all of the circumstances, that the Affiant's affidavit submitted to this Court is false and that the * * * witness told the truth at the trial."

During the trial before the jury the defense introduced various letters written from prison by Bebout to defendant and a recantation by Bebout of all statements made by him implicating defendant in the robbery, all written at a time when Bebout was urging defendant and his mother to arrange for his

release on bond. This court has read the complete transcript of Bebout's testimony before the jury, and also the transcript of his testimony at the hearing on the motion for a new trial. His testimony before the jury was detailed and explicit, but at the later hearing his answers were general and vague. It was reasonable for the trial judge to conclude that the latest affidavit of this witness, relied upon in support of the motion of a new trial, was simply another in a series of contradictory documents reflecting upon the credibility of the witness, and that this affidavit should be rejected as false.

As said by this court in Gordon v. United States, 178 F.2d 896, 900 (C.A. 6), cert. denied, 339 U.S. 935, 70 S.Ct. 664, 94 L.Ed. 1353:

"In the instant case, the first and primary ground, above set forth, for granting a new trial is lacking. The district court was not reasonably well satisfied that the testimony given by Banning on the trial was false. On the contrary, the court believed Banning's statements in his affidavits recanting his testimony on the trial were false. Under the circumstances, this was not an unreasonable conclusion."

2) Interrogation by Trial Judge

Appellant complains that during the five-day trial, the District Judge asked more than 1100 questions of various witnesses, and contends that this constitutes prejudicial and reversible error.

This court said in Knapp v. Kinsey, 232 F.2d 458, 466 (C.A. 6), cert. denied, 352 U.S. 892, 77 S.Ct. 131, 1 L.Ed.2d 86:

"The trial judge in the federal court is more than a mere arbitrator to rule upon objections and to instruct the jury. It is his function to conduct the trial in an orderly way with a view to eliciting the truth and to attaining justice between the parties. It is his duty to see that the issues are not obscured and that the testimony is not misunderstood. He has the right to interrogate witnesses for this purpose."

To like effect see Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680.

The right of a trial judge to interrogate witnesses and comment on the evidence is not unlimited. Quercia v. United States, 289 U.S. 466, 470, 53 S.Ct. 698, 77 L.Ed. 1321. While he may examine those who testify, "he nonetheless must remain the judge, impartial, judicious, and, above all, responsible for a courtroom atmosphere in which guilt or innocence may be soberly and fairly tested. Because of his proper power and influence it is obvious that the display of a fixed opinion as to the guilt of an accused limits the possibility of an uninhibited decision from a jury of laymen much less initiated in trial procedure than he. He must, therefore, be on continual guard that the authority of the bench be not exploited toward a conviction he may privately think deserved or even required by the evidence." United States v. Brandt, 196 F.2d 653, 655 (C.A. 2).

"The test is not the number of questions the trial court asks." United States v. DeFillo, 257 F.2d 835, 839 (C.A. 2), cert. denied, 359 U.S. 915, 79 S.Ct. 591, 3 L.Ed.2d 577. "The test is whether, because of such questioning, the defendant was prejudiced." United States v. Kelly, 329 F.2d 314, 315 (C.A. 3); Woodring v. United States, 311 F.2d 417 (C.A. 8), cert. denied, 373 U.S. 913, 83 S.Ct. 1304, 10 L.Ed.2d 414.

■ While the trial judge in the instant case asked an unusually large number of questions, we do not find that his questions were so phrased as to indicate any opinion on his part as to the veracity of the witnesses or as to the guilt of defendant. The judge asked only one question of defendant. Most of his questions were directed to Miss Charlotte See, a witness for the prosecution. The facts brought out by these questions reflected to some extent upon the credibility of this witness, and were of such

a nature that they could have been helpful to defendant rather than hurtful. At the end of his questioning of Miss See, the trial judge gave counsel for both parties an opportunity to ask additional questions of this witness, and counsel for defendant proceeded to cross-examine her at great length. Other questions asked by the judge tended to clarify and summarize the testimony. The charge to the jury contained explicit instructions that no inferences were to be drawn from these questions.[2]

While the large number of questions asked by the trial judge is not to be commended as a desirable practice, we hold that these questions do not constitute prejudicial and reversible error on the record in this case.

### 3) Sufficiency of The Evidence

In addition to reading the appendices submitted by both parties, this court has read the entire transcript of the evidence at the trial, consisting of 645 typewritten pages, and the transcript of the hearing on the motion for a new trial, consisting of 51 typewritten pages. Bizarre facts are disclosed by the record, such as the action of defendant in wrapping approximately $5,000 in currency in a package camouflaged as a Christmas gift and entrusting its safekeeping to Miss See. Yet Miss See's testimony is clear that defendant delivered this package to her. Defendant apparently adopted the psychology of Edgar Allen Poe's *"The Purloined Letter"* and believed that F.B.I. agents would never find the gift-wrapped package where it was kept on a television set in Miss See's bedroom. The evidence is convincing that this package contained part of the money stolen from the savings and loan association. We find that the evidence was sufficient to take the case to the jury and to support the verdict of guilt beyond a reasonable doubt.

Defendant has argued and briefed other issues on this appeal, all of which have been considered and found to be without merit.

Affirmed.

---

**2.** The trial judge charged the jury as follows on this point:

"You are further instructed, ladies and gentlemen, that if the Judge has said or done anything which has suggested to you that he is inclined to favor the claims or positions of either of the parties, you will not suffer yourselves to be influenced by any such suggestion.

"I have not expressed, nor have I intended to express, any opinion as to what witnesses are or are not worthy of credence or what inference or inferences should be drawn from the evidence adduce in this case.

"During the course of the trial I occasionally asked questions of a witness in order to bring out facts not then fully covered in testimony. Do not assume that I hold any opinion on the matters to which my questions related. Remember at all times that you as jurors are at liberty to disregard all comments of the Court in arriving at your own findings as to the facts."