375 F.2d 1004
 Precious H. CASKEY, as Administratrix of the Goods, Chattels and Credits which were of Willard Eugene Caskey, Appellant,
v.
The VILLAGE OF WAYLAND and the Estate of Charles E. Rose, deceased, Appellees.
 No. 362.
 Docket 31001.
 United States Court of Appeals Second Circuit.
 Argued March 14, 1967.
 Decided April 3, 1967.
 
 Richard E. Shandell, New York City (Jacob D. Fuchsberg, Fuchsberg & Fuchberg, New York City, on the brief), for appellant.
 Thomas W. Sullivan, Rochester, N. Y. (John F. Redmond, Zurett, Sullivan, Smith, Gough & Skipworth, Rochester, N. Y., on the brief), for appellees.
 Before KAUFMAN, ANDERSON and FEINBERG, Circuit Judges.
 IRVING R. KAUFMAN, Circuit Judge:
 
 
 1
 This case presents the somewhat unusual situation of a winning plaintiff arguing that the jury's verdict should be upset and a new trial ordered. Precious H. Caskey, the appellant, brought a negligence action against the Village of Wayland, New York, and the estate of Charles E. Rose, a former Wayland police officer, to recover for the wrongful death of her husband Willard E. Caskey, who suffered critical injuries when officer Rose's police car, in which the deceased was a passenger, left the highway and crashed. Mrs. Caskey also sought damages for the pain and suffering endured by her husband prior to his expiration. The jury returned a verdict in appellant's favor, awarding her $30,900.00 on the wrongful death action, and $1,100.00 for pain and suffering. On appeal, Mrs. Caskey argues that the verdict was "hopelessly and grossly inadequate," and that the trial judge's instructions unfairly influenced the jury to return such an award. For both of these reasons we are urged to order a new trial limited to the issue of damages.
 
 
 2
 The evidence presented at the trial disclosed the following sequence of rather bizarre events which led to Mr. Caskey's death. The deceased was a long distance interstate tractor-trailer driver, employed by a trucker whose depot was located in Charlotte, North Carolina. On May 14, 1964, Caskey and a co-employee, Elburn L. Christy, left the terminal in Rochester, New York, in separate trucks, with a cargo destined for North Carolina. At about 10:25 that evening, as the trucks were passing through the Village of Wayland, the drivers were stopped by officer Rose and given tickets for operating vehicles that were over the legal height.
 
 
 3
 Christy testified that the officer told both men that they were under arrest and that since neither alleged violator had the funds to post $100 bail, they would have to remain in Wayland for trial at ten o'clock the next morning. The officer permitted Caskey, however, to call his employer in Charlotte, and the dispatcher there informed Caskey that the necessary $200 would be sent by wire. The two drivers were then allowed to go to a local hotel for coffee while officer Rose continued to make his rounds. Later that evening Caskey and Christy met Rose. At that time the officer attempted to phone the Western Union office in Danville, New York, to see if the bail money had arrived, but the call was interrupted by the operator who informed Rose that he had been requested to investigate an accident that had occurred near a local cemetery. Christy testified further that the officer then turned to the two drivers and stated, "You men go with me." They complied with his order because, as Christy put it, "we were under arrest, so we went."[1]
 
 
 4
 The three men then rode in officer Rose's car (the officer did the driving) to one of the local cemeteries. After arriving there and observing nothing significant, the officer concluded that the accident must have occurred near another cemetery and set out in that direction. Christy stated at the trial that he had observed the speedometer which read 75 miles per hour, and that the automobile was still accelerating when it failed to negotiate a curve, left the highway and crashed head on into a tree. The accident occurred at about 2:00 A. M. on May 15, 1964. Officer Rose was killed and Caskey was taken in a critical condition to a hospital in Rochester where he died on the morning of June 2.
 
 
 5
 The greater part of the trial was taken up with questions relating to the damages which Mrs. Caskey was entitled to recover (assuming the jury found negligence on the part of officer Rose) for the wrongful death of her husband and for the pain and suffering he endured prior thereto. In this connection, it was established that Mr. Caskey was 40 years old at the time of his death while his wife was 3 months younger. They had been married approximately 9 months earlier and lived in Iron Station, North Carolina, with Mrs. Caskey's 2 teenage daughters from a previous marriage. No claim of dependency of these 2 daughters on the decedent was urged. Moreover, Mrs. Caskey held a part time job from which she earned $30 a week, the money being used to meet the expenses of her children; and Mr. Caskey's earnings for the years 1957-63 ranged from approximately $5,500 to $8,500. Dr. Robert H. Carrier also testified as to the nature of the injuries sustained by Mr. Caskey, the type of medical treatment he received in the hospital, and the possible pain and suffering he endured during the 18 days he was in the hospital prior to his death.
 
 
 6
 After hearing the testimony and being charged by the judge, the jury returned a verdict in the sum of $30,900 on the wrongful death action, but at first awarded no damages for pain and suffering. The trial judge, recognizing the jurors' obvious error, directed them to return to the jury room for further reflection.[2] Upon reconsideration, the jury awarded $1,100 for pain and suffering and adhered to the wrongful death award. Mrs. Caskey's counsel then moved to set aside the verdict as inadequate and for a new trial. The motion was subsequently denied by Judge Burke.
 
 
 7
 Since the appellees do not contest on appeal the inherent finding of negligence, we shall proceed to appellant's argument that this Court should order a new trial because the jury's verdict with regard to both causes of action was "hopelessly and grossly inadequate." The evidence in this case causes us to believe there is much merit to Mrs. Caskey's claim. Faced with hospital and funeral bills which totaled $3,323.61 (and without considering fees for counsel), she would be left with only $27,576.39 as compensation for the financial loss she suffered as a result of her husband's death. In light of Mr. Caskey's age when he died (40 years) and his earnings which averaged slightly over $7000 a year for the 7 years prior to his death,[3] we must frankly recognize that the jury's award for Caskey's wrongful death appears rather penurious.
 
 
 8
 We share this view also with respect to the damages awarded for pain and suffering (damages that were awarded only after the jury had been asked by the judge to reconsider its original verdict). Mr. Caskey was hospitalized for 18 days with serious injuries that eventually led to his death. It appears that he was never unconscious during this period, and for the first 7 days no pain killers could be administered because of the head injuries he had sustained. But the jury saw fit to assess only $1100 for this severe pain and suffering.
 
 
 9
 Having stated our view with respect to the jury's award, we hasten to add that we recognize that a jury's verdict should not be disturbed merely because appellate judges consider the judgment scanty or believe that they would have awarded a larger sum had they tried the case. See Dagnello v. Long Is. R. R. Co., 289 F.2d 797, 806 (2d Cir. 1961); Nussbaum v. Warehime, 333 F.2d 462 (7th Cir. 1964), cert. denied, 379 U.S. 979, 85 S.Ct. 682, 13 L.Ed.2d 570 (1965). It is not our function to second guess the jury. Nevertheless, "[w]here the verdict returned by a jury is palpably and grossly inadequate or excessive, it should not be permitted to stand," Dimick v. Schiedt, 293 U.S. 474, 486, 55 S.Ct. 296, 79 L.Ed. 603 (1934) (emphasis added); and the seventh amendment does not bar us from reviewing the denial of a motion for a new trial grounded on the allegedly excessive or inadequate verdict. See Dagnello v. Long Is. R. R. Co., supra, 289 F.2d at 802-805; but see Neese v. Southern Ry. Co., 350 U.S. 77, 76 S.Ct. 131, 100 L.Ed. 60 (1955) (per curiam).
 
 
 10
 It is well established, however, that when an appellant seeks a new trial because the verdict was excessive, the grounds for setting aside a denial of such a motion are quite narrow. If the "action of the trial court * * * [is] not without support in the record * * * its action should not * * * [be] disturbed by the Court of Appeals." Neese v. Southern Ry. Co., supra. And this Court has held that a new trial should not be ordered unless there has been "an abuse of discretion" and the verdict "is so high that it would be a denial of justice to permit it to stand." Dagnello v. Long Is. R. R. Co., supra, 289 F.2d at 806. Accord, Diapulse Corp. of America v. Birtcher Corp., 362 F.2d 736 (2d Cir.) cert. dismissed, 385 U.S. 801, 87 S.Ct. 9, 17 L.Ed.2d 9 (1966); La France v. New York, N. H. & H. R. R. Co., 292 F.2d 649, 650 (2d Cir. 1961) (verdict will not be modified unless "fantastic"); Wooley v. Great Atl. & Pac. Tea Co., 281 F.2d 78, 80 (3d Cir. 1960) (verdict not to be disturbed unless "so grossly excessive as to shock the judicial conscience" so that it would be a "manifest abuse of discretion" not to order a new trial).
 
 
 11
 As we have noted earlier, it is rare for a plaintiff with a verdict in his favor to request a new trial on the ground that the jury's verdict was inadequate; thus, the courts have had little opportunity to articulate the standards for determining when a verdict is so inadequate as to require a new trial.[4] We cannot, however, see any sound rationale for formulating standards to be applied when a verdict is challenged as inadequate which would differ from those utilized upon a challenge for excessiveness. See Wooley v. Great Am. & Pac. Tea Co., supra; Bass v. Dehner, 21 F.Supp. 567, 568 (D.N.M.1937) (new trial where verdict is "grossly inadequate"). But, we are spared the task of clearing the semantic forest, for in this case the question of whether the judge should have set aside the verdict as inadequate need not be decided, since we agree that the trial court's instructions on damages had the effect of influencing the jury unfairly to bring in a small verdict. While it is true that trial judges in the federal courts are given wide latitude to comment on the evidence that has been presented, see, e.g., Quercia v. United States, 289 U.S. 466, 53 S.Ct. 698, 77 L.Ed. 1321 (1933); United States v. De Fillo, 257 F.2d 835, 839-840 (2d Cir. 1958), cert. denied, 359 U.S. 915, 79 S.Ct. 591, 3 L.Ed.2d 577 (1959), the judge must take care not to utilize the privilege of comment so as to prejudice beyond repair a party's cause.
 
 
 12
 We have examined the judge's charge assiduously because of appellant's claim that the court's charge was the cause for the small verdict. In his charge, Judge Burke first summarized the testimony regarding the events that led up to the tragic accident. He then instructed the jurors as to the law of negligence and assumption of risk, and explained the nature and kinds of recovery which Mrs. Caskey would be entitled to receive if the jury found that officer Rose had been negligent. The judge went on to summarize the testimony which related to the character of the injuries Mr. Caskey had suffered and the treatment he had received while in the hospital. We cannot fault these portions of the charge.
 
 
 13
 When he turned to the amount of damages which should be recovered, however, the judge commenced his instructions by stating:
 
 
 14
 I want to say a word now about the amount of damages. I usually say nothing at all about the amount of damages except to enumerate the specific items of expense which have been explicitly proven.
 
 
 15
 I speak only about the amount of damages generally unless some circumstance during the trial has made it appropriate to do so and I consider it as my duty in this case to do so because of the fact that at the very opening of the case the plaintiff's attorney brought up the question of what the case is worth, and he stated in so many words that he thought the case was worth upwards of $500,000.[5]
 
 
 16
 It seems to us that this language strongly implied that Mrs. Caskey's counsel had somehow acted improperly at the trial, and that it was therefore necessary for the court to give special instructions on the issue of damages. Despite this, had the judge then proceeded merely to set down guidelines for the jury to use in determining the amount of damages, we would be disinclined to find prejudicial error. But instead the judge soon elaborated on the theme of likely impropriety by appellant's counsel:
 
 
 17
 Now I want to speak a moment about the techniques that I have experienced in the trial of these cases. Some lawyers don't submit any figures to the jury, but in those cases where the plaintiff's lawyer does submit a figure to the jury it comes about in one of these three ways, in my experience: Sometimes they will get over to the jury how much they have sued for in the case, and incidentally, the amount that is sued for in the wrongful death action in this case is $500,000. There is no restraint upon what anyone sues for in a case. It costs $15 to file a Complaint. It doesn't cost you five cents more to sue for a million dollars or for two million dollars than it does for one thousand dollars. There is no restraint upon anyone who sues a defendant in a negligence case except the self restraint of the lawyer who draws the complaint.
 
 
 18
 * * * * * *
 
 
 19
 There is another technique where the lawyer for the plaintiff will, in oral explanation, come up with a certain figure and that is his idea that he put over to the jury as to what the recovery should be; and there is a third method which is often resorted to, and that is to use the blackboard, and the lawyer will compute in a graphic way all of the damages according to his idea about what the case is worth and his idea as to how long the decedent would live and his idea how long he had worked and they will come up with a final figure and then in broad chalk they will outline it and it has always been my idea that the purpose in that was to leave you with a target so if you miss it, you won't miss it by much.
 
 
 20
 It is of interest that at no time during the trial had appellant's counsel resorted to a blackboard. In fact, it seems to us that the entire discussion of improper techniques frequently employed by counsel was totally irrelevant to the present case. And while the judge did tell the jury at one point that it alone was to determine the amount of damages, serious harm already had been done which could not be eradicated by the routine statement of the jury's role. His characterizations did not consist of a marshaling of the evidence, but were pejorative in nature, and were likely to remain firmly in the jurors' minds. The innuendo that appellant's counsel somehow had acted improperly and that the damages being sought were exorbitant, continued to linger in the background. The judge took note that "some of you jurors have probably never sat upon juries before," and it is certain that occupying the position of great influence which he did, his words would be apt to make a deep impact on these jurors. Moreover, we note that the comments under attack came near the end of the charge, and they therefore were likely to remain deeply imbedded in the minds of the jurors who were trying this case which involved an out-of-state plaintiff suing a local village and the estate of one of its former police officers. In this connection we have noted already that the jury demonstrated either serious confusion or prejudice when, in the first instance, it awarded nothing to Mrs. Caskey for her husband's pain and suffering despite the 18 days he clung to life before finally succumbing. Indeed, the colloquy previously cited[6] reveals that the judge quickly recognized the problem when sua sponte he directed the jury to return to the jury room to reconsider the verdict.
 
 
 21
 In sum, we believe that the portion of the charge relating to damages was clearly prejudicial and went beyond the permissible limits of comment. Accordingly, we order a new trial. See Quercia v. United States, supra
 
 
 22
 There remains but one final issue for our consideration. Appellant has urged us to order a new trial limited to the issue of damages. We do not believe, however, that such a course should be followed in this case. Partial new trials should not be resorted to "unless it clearly appears that the issue to be retried is so distinct and separable from the others that a trial of it alone may be had without injustice." Gasoline Products Co. v. Champlin Refining Co., 283 U.S. 494, 500, 51 S.Ct. 513, 75 L.Ed. 1188 (1931). In the present case, the trial was not divided into separate stages; the issues of liability and damages were tried together. Moreover, the small judgment returned by the jury may well indicate that the jurors were not unanimous in their finding of negligence, and that the verdict represented a compromise on that issue.[7] In these circumstances, we believe that it would be unjust to the defendants to restrict the new trial to the issue of damages. Bass v. Dehner, supra; Moore's Federal Practice § 59.06 at p. 3762; cf. Dimick v. Schiedt, supra, 293 U.S. at 486, 55 S.Ct. 296, 79 L.Ed. 603.
 
 
 23
 Reversed and remanded.
 
 
 
 Notes:
 
 
 [1]
 The defendants argued at the trial that Caskey had assumed the risk of traveling in a police vehicle. They contended that officer Rose had not ordered Caskey and Christy to accompany him, but had merely stated: "Let's go for a ride," and the 2 men voluntarily went along
 
 
 [2]
 The Clerk: Ladies and Gentlemen of the Jury, have you agreed upon a verdict?
 The Foreman: We have.
 The Clerk: And how do you find?
 The Foreman: We hold for the plaintiff in the amount of $30,900 and "zero" on the second.
 The Court: You have got two causes of action; one for the wrongful death and the other action for pain and suffering.
 The Foreman: No settlement on pain and suffering.
 The Court: You have got two cases before you and you have got to decide or report to me that you can't agree. I'm going to send you back for reconsideration. You have got two causes of action; one for wrongful death and I told you the elements that go into that, and the other is pain and suffering. I will send you back and see if you can agree upon a verdict.
 (The jury again retired at 5:00 o'clock P. M.)
 (At 5:20 o'clock P. M. the jury again returned to the court room and the following occurred:)
 The Court: Ladies and Gentlemen of the Jury, have you agreed upon a verdict?
 The Foreman: We have.
 The Court: How do you find on suit number two for the Plaintiff?
 The Foreman: For the Plaintiff in both?
 The Court: Yes.
 The Foreman: In the amount of $30,900 on the first; and $1,100 on the second.
 
 
 [3]
 Mrs. Caskey testified that her husband had contributed approximately $625 per month for the household expenses
 
 
 [4]
 Probably the clearest case for ordering a new trial is when the jury's verdict is less than the damages plaintiff actually has incurred and proven by undisputed evidence. See, e. g., Devine v. Patteson, 242 F.2d 828, 832 (6th Cir.), cert. denied, 355 U.S. 821, 78 S.Ct. 27, 2 L.Ed. 2d 36 (1957); Reisberg v. Walters, 111 F.2d 595 (6th Cir. 1940)
 
 
 [5]
 Appellant argues that its counsel stated only that the jury "would find that the damages approached $500,000, not that the case was worth that." Unfortunately we cannot verify this contention because neither the opening statements by counsel nor their summations were taken down by the court reporter
 
 
 [6]
 See note 2, supra
 
 
 [7]
 We note that it took the jury 4 hours and 5 minutes to reach its initial verdict, but only 20 minutes upon reconsideration to award $1,100 for pain and suffering