Judgment will be entered vacating the judgment of the District Court and dismissing the complaint.

UNITED STATES of America,
Appellee,

v.

Salvatore FRASCONE, Appellant.

No. 79, Docket 26944.

United States Court of Appeals
Second Circuit.

Argued Oct. 9, 1961.

Decided Feb. 5, 1962.

As Amended on Denial of Rehearing
March 19, 1962.

Earl J. McHugh, New York City, for appellant,

Robert M. Morgenthau, U. S. Atty., S. D. New York, New York City (David Klingsberg, Arthur I. Rosett, Asst. U. S. Attys., of counsel), for appellee.

Before CLARK, WATERMAN and MOORE, Circuit Judges.

WATERMAN, Circuit Judge.

After a jury trial in the United States District Court for the Southern District of New York, appellant, Salvatore Frascone, was convicted on four counts of an indictment charging him with making illegal sales of narcotics. On this appeal we affirm the conviction.

At appellant's trial three agents of the Federal Bureau of Narcotics testified for the prosecution. Agent Charles R. McDonnell testified that on October 6, 1958, at 116th Street and Madison Avenue in New York City, Joseph Bove, a special employee, or informer, working for the Bureau of Narcotics, introduced him to a man called "Johnny," who was later identified as appellant. At that meeting McDonnell told appellant that he wished to purchase heroin. Appellant offered to get McDonnell an ounce of "pure" for $400. The agent answered that he only wanted half an ounce. Frascone asked McDonnell where he could be reached, McDonnell gave Frascone his telephone number, and Frascone said that he would call him the next evening.

All the while narcotics agent Patrick Biase had this meeting under surveillance. He testified that after the conversation related above appellant entered a 1948 Plymouth and drove to the Vivere Bar and Grill at Second Avenue and 10th Street.

McDonnell testified that on the next day, October 7, Frascone called him as promised, and pursuant to the call they met at 10th Street and Second Avenue. After Frascone entered McDonnell's automobile, the agent drove around the block and stopped at 11th Street and Second Avenue, as Frascone had instructed him to do. There appellant got out of McDonnell's car and walked to a Cadillac parked nearby. Then appellant reentered the agent's car and gave McDonnell a small brown package, for which the agent paid $200. Frascone asserted that the package contained a full ounce of heroin and therefore McDonnell owed him another $200. McDonnell said that he would have to see Frascone the next day about the additional money. Frascone acquiesced. Agent Biase, who had observed the first meeting between McDonnel and appellant, was also observing the meeting of October 7. He testified that after McDonnell left, appellant went into the Vivere Lounge. The next day McDonnell paid Frascone the additional $200.

An analysis of the contents of the package which Frascone had given McDonnell revealed that it contained 395 grams, slightly less than one ounce, of heroin.

The next contact between appellant and the narcotics officers, McDonnell testified, was a telephone call by appellant to McDonnell on November 21, 1958, in which appellant offered to sell him several more ounces of heroin. They agreed on a price of $280 for this purchase. McDonnell met Frascone at 10th Street and Second Avenue once again. McDonnell was accompanied by another agent, Jack R. Peterson, whom McDonnell introduced to

appellant as the man who would pick up the narcotics for McDonnell in the future. After a brief conversation held privately between McDonnell and appellant, McDonnell counted out $300 and gave it to agent Peterson. McDonnell then left Peterson alone with Frascone.

Agent Peterson testified that he and Frascone walked over to Avenue A. There Frascone told the agent that the heroin was under the front seat of a car parked on that avenue near the corner of 11th Street. To identify the correct car, Frascone walked up to it and lit a cigarette. It was the same 1948 Plymouth that appellant had driven on October 6. Then Peterson entered the car and found under the front seat two glassine envelopes containing white powder. Peterson examined the powder as best he could and concluded that it was heroin. He rejoined Frascone, who had been standing nearby, and paid him $280 for the two envelopes.

A subsequent laboratory analysis proved the white powder to be approximately two ounces of heroin.

On December 5, 1960, a four count indictment was filed against Frascone, charging him with making illegal sales of narcotics. Counts one and two related to the sales of October 7, 1958. Count one charged a violation of narcotics laws, 46 Stat. 586 (1930), 21 U.S.C.A. § 173, and 70 Stat. 570 (1956), 21 U.S.C.A. § 174. Count two charged a violation of Int.Rev.Code of 1954 §§ 4701, 4703, 4704 (a), 4771(a), 26 U.S.C.A. §§ 4701, 4703, 4704(a), 4771(a), which impose a federal tax on narcotics. Counts three and four related to the sale of November 21, 1958, and, respectively, charged Frascone with violations of the same narcotics acts as did counts one and two. After a trial lasting three days Frascone was convicted on March 2, 1961, on all four counts of the indictment and sentenced to seven years imprisonment and a fine of $4,000. Frascone now appeals to this court from the judgment entered upon that conviction.

█ Upon this appeal Frascone first asserts that the trial judge committed reversible error in his explanation to the informer, Bove, called as a witness by the defense, concerning Bove's privilege against self-incrimination. The court advised Bove of his right in these terms:

"The Court: Mr. Bove, you have been brought down here by the marshal?

"The Witness: I was.

"The Court: Well, I wish to advise you that under the Fifth Amendment of the Constitution—you may be seated—

"The Witness: Yes.

"The Court:—you may refuse to answer any questions that might be asked if you feel that they might tend to degrade or incriminate you."

To most of the questions asked him on direct examination by defense counsel Bove replied, "I refuse to answer on the ground that it may tend to incriminate or degrade me," or, simply, "I take the Fifth Amendment." Appellant has especially called to our attention three of the questions which the informer refused to answer:

"Q. Did you ever introduce Salvatore Frascone to one Charles McDonnell, a narcotic agent? A. I refuse to answer. I take the Fifth.

"Q. Did you ever tell Agent McDonnell, or anybody else connected with the Bureau of Narcotics, or any member of the United States Government—(interruption omitted)—that you knew Salvatore Frascone to be the same party called Johnny? A. I refuse to answer. I take the Fifth for the same reason.

"Q. Did you ever introduce Charles R. McDonnell to one Johnny as a gentleman from New Jersey? A. I refuse to answer. I take the Fifth for the same reason."

█ At the trial defense counsel made a specific objection to this reliance by his witness on the Fifth Amendment. He only objected on the ground that Bove could not assert his right against self-incrimination "unless he conveys the de-

gradating or incriminating circumstances which would entitle him to the use of it, and those circumstances must be conveyed to your Honor, to find out whether he is justified in his position, or because he is just acting capriciously because he wants to have it done that way, but that is not a right under the Fifth Amendment." Indeed the trial court's advice to the witness was erroneous, for the privilege against self-incrimination does not protect one from testifying to matters which might degrade him without also incriminating him. Brown v. Walker, 161 U.S. 591, 605–606, 16 S.Ct. 644, 40 L.Ed. 819 (1896). However, the single ground upon which appellant's trial counsel based his specific objection to the witness's assertion of privilege was untenable. To require one to relate the circumstances which he thinks entitle him to assert his privilege against self-incrimination would cause him while asserting the privilege to lose the protection the privilege guarantees. Hoffman v. United States, 341 U.S. 479, 486–487, 71 S.Ct. 814, 95 L.Ed. 1118 (1951). Generally, if the objection is based upon an untenable ground a specific objection made at trial to the exclusion of evidence cannot be relied upon for a reversal even though a valid ground for objection existed. See United States v. Sing Kee, 250 F.2d 236 (2 Cir. 1957), cert. denied, 355 U.S. 954, 78 S.Ct. 538, 2 L.Ed.2d 530 (1958); Norwood v. Great Am. Indem. Co., 3 Cir., 146 F.2d 797 (1944); Wigmore, Evidence § 18 at 339–40 (3d ed. 1940). As we stated in United States v. Sansone, 2 Cir., 231 F.2d 887, 891, cert. denied, 351 U.S. 987, 76 S.Ct. 1055, 100 L.Ed. 1500 (1956):

> "While we may in our discretion notice errors not brought to the attention of the trial court, Rule 52 (b), Federal Rules of Criminal Procedure, 18 U.S.C., this discretion will not be exercised to reverse a conviction based on ample evidence unless the errors have seriously prejudiced the defendant or affected the fairness, integrity, or public reputation of judicial proceedings. See United States v. Atkinson, 1936, 297 U.S.

157, 160, 56 S.Ct. 391, 80 L.Ed. 555; United States v. Jones, 7 Cir., 1953, 204 F.2d 745, certiorari denied 346 U.S. 854, 74 S.Ct. 67, 98 L.Ed. 368, rehearing denied 346 U.S. 905, 74 S. Ct. 216, 98 L.Ed. 404."

If it were demonstrated from the trial record that the trial court's uncorrected mistake would result in a miscarriage of justice, we would conceive it our duty to overlook counsel's failure properly to support his objection. But no such injustice has occurred here. It is inconceivable to us that Bove would have answered the significant questions asked him by the defense if he had received proper advice as to the scope of his rights under the Fifth Amendment. When asked questions that could have tended to incriminate him, he would not have said to himself, "I am willing to incriminate myself but am unwilling to degrade myself—therefore, I shall answer the questions." And under the liberal formulation of the self-incrimination privilege announced in Hoffman v. United States, 341 U.S. 479, 71 S.Ct. 814, 95 L.Ed. 1118 (1951), Bove had a right not to answer any of the important questions asked him. It was not perfectly clear that the answers to any of these questions could not possibly have tended to incriminate him. They might have led to the disclosure that Bove had been associated with a narcotics ring of which the authorities were not yet aware, or that he had committed more drug violations than those for which he had already been convicted. A few questions which Bove refused to answer, as the inquiry about his age, would not appear to have required incriminating answers, but, if answered, would not have advantaged the defense. Nor did counsel by making an offer of the testimony he had expected his witness to give apprise the judge of how Frascone could have been prejudiced by Bove's silences. Appellant has not persuaded us that this alleged trial error of which he complains prejudiced him.

■ Appellant also argues that the prosecutor made several improper re-

marks during his summation to the jury. Two of these statements were:

> Now, are we railroading this poor defendant to jail? That is the only issue.

> Is [the U. S. chemist] also to be considered as a part of this great conspiracy, presumably of which I am a member, too, to send this man to jail?

At trial appellant's counsel failed to object to this part of the prosecutor's summation. The prosecutor also stated in his closing speech to the jury:

> [I]t would be improper by and large to be considered by you that this man was suspected of being part of an organization known as the Valachi organization.

Defense counsel objected to this remark and moved for a mistrial, claiming that no testimony had been offered which connected appellant with such an organization. The court denied the motion for a mistrial but told the jury to disregard the prosecutor's comment.

■ We find none of these statements a sufficient basis for reversing the conviction. Although the prosecutor's remarks about railroading Frascone to jail were uncalled for, they were not so prejudicial—especially in the light of the impressive evidence against appellant—that we can ignore appellant's failure to object to them at the trial. United States v. DeFillo, 2 Cir., 257 F.2d 835, 840 (1958), cert. denied, 359 U.S. 915, 79 S.Ct. 591, 3 L.Ed.2d 577 (1959). The name of Joe Valachi came into the testimony when, upon cross-examination of Agent McDonnell, defense counsel pressed the agent to reveal whether the narcotics authorities were really looking for someone else when they used Bove and apprehended Frascone. McDonnell answered they had an idea they might reach Joe Valachi, who he then asserted was one of the leading narcotics violators in this country. Therefore, the referral by the prosecutor in his summation to the Valachi organization was proper. The trial judge's instruction to the jury to disregard the prosecutor's statement more than adequately cured any possible imputation that he had acted unfairly.

■ We now come to appellant's third ground for reversal. While cross-examining Agent McDonnell, defense counsel asked him:

> "Q. Where did you learn the name Frascone from?

> "A. Where did I learn of his name?

> "Q. Yes. A. From Bove.

> "The Court: Tell him the whole story. Where did you learn it?

> "The Witness: From the photos in the police gallery, the Bureau of Criminal Identification, New York City Police Department."

Defense counsel made no objection to this testimony. Later, upon recross-examination of Agent Peterson, the following exchange occurred:

> "Q. Since 1958 to 1961 the only time you have seen this defendant other than that night was in the courtroom? A. In flesh and blood.

> "The Court: Well, have you seen him in any other way?

> "The Witness: Photographs.

> "The Court: Where?

> "The Witness: At the Federal Bureau of Narcotics."

The defense immediately moved for a mistrial, which was denied. Appellant asserts that these references to pictures of him in the files of the New York City Police Department and of the Federal Bureau of Narcotics were prejudicial errors.

■ This testimony, given in answer to an inquiry by the court, was properly admitted. Testimony about the defendant's criminal activity is inadmissible if its probative value is merely to show a general criminal disposition on the part of the defendant. But if the testimony serves a further purpose, such as to reveal the defendant's capacity, habit, plan, knowledge, intent, motive, or identity with respect to the crime of which he is

charged in the case on trial, the testimony is admissible in spite of its reference to previous criminality. Wigmore, Evidence § 217 (3d ed. 1940). In his questions to both narcotics agents upon cross-examination, defense counsel was apparently raising the issue of the wrongdoer's identity. Therefore, although the reference to appellant's pictures in the files of the law enforcement agencies suggested to the jury that the defendant had had previous clashes with the law, it was permissible, inasmuch as the issue had been created by the defense, for the witnesses, in order to explain how they could identify appellant, to testify that the pictures served to confirm their belief that the individual they personally observed was appellant. Cf. Tucker v. United States, 214 F.2d 713 (9 Cir. 1954).

Fourth, appellant complains that the district judge on several occasions during the trial made sarcastic, or otherwise offensive, remarks to appellant and his trial counsel. A trial judge must always remember that he is the personification of our legal system in the eyes of all who are present in his courtroom, and, therefore, it behooves him to act with dignity at all times. We have reviewed the statements of the trial judge which appellant claims to have been improper. Although one or two of his comments would have been better unsaid, the record does not disclose that the judge's remarks obstructed the defense in its efforts to present evidence; and the charge to the jury was eminently fair as to all the disputed issues of law and fact in the case.

There is no merit in appellant's final contention that he is now entitled to a new trial because he was remanded to jail without bail at the outset of his trial. Appellant had the right to appeal this order at the time it was made. Not only did he fail to appeal at the time of his remand but he even failed then to assert any objection to the court's order. Moreover, this issue, raised for the first time on appeal, is inappropriately raised, and the relief requested, a new trial, is inappropriate also.

Affirmed.