**UNITED STATES of America,
Appellee,**

v.

**Jose Torres CRUZ and Ruben Alberto
Vega y Merced, Appellants.**

**No. 414, Docket 71–1857.**

United States Court of Appeals,
Second Circuit.

Argued Jan. 6, 1972.

Decided Feb. 2, 1972.

Certiorari Denied May 15, 1972.
See 92 S.Ct. 1769.

James N. Egan, Hartford, Conn., for appellants.

Randolph C. Roeder, Asst. U. S. Atty.; Hartford, Conn. (Stewart H. Jones, U. S. Atty., D.Conn., on the brief), for appellee.

Before FRIENDLY, Chief Judge, and MOORE and OAKES, Circuit Judges.

PER CURIAM:

Appellants ask us in their brief on appeal to characterize as plain error, Fed. R.Crim.P. 52(b), two comments by the court occurring in the course of a 2½-day trial. The comments[1] are said to demonstrate the court's "racial prejudice against the defendants in particular and Puerto Ricans in general" and to have deprived appellants of a fair trial. In a supplementary brief submitted at argument and on oral argument appellants additionally urge us to note as plain error 17 "interruptions" by the trial judge of defense counsel, said to have broken "counsel's train of thought" and tended "to affect a jury's evaluation of his ability" or to have disparaged the defense attorney with subsequent prejudice to the accused.

■ A careful reading of the entire transcript of the trial indicates that appellants' charges are unfounded. In context the two comments referred to in footnote 1 herein were innocent. Three witnesses as well as one of the defendants were named Jose, and two of them had the last name of Torres. The first comment complained of was clarificatory only. While the second comment— "Maybe that's a good way to learn English"—was unnecessary, we do not treat it as manifesting racial bias since it appears that the witness was answering questions in English without the aid of the interpreter. An examination of the

record of the whole trial, United States v. Switzer, 252 F.2d 139 (2d Cir.), cert. denied, 357 U.S. 922, 78 S.Ct. 1363, 2 L. Ed.2d 1366 (1958), does not reveal interference by the court so extensive as to require reversal. *See* United States v. Tyminski, 418 F.2d 1060, 1062 (2d Cir. 1969), cert. denied, 397 U.S. 1075, 90 S.Ct. 1523, 25 L.Ed.2d 810 (1970). Moreover, the court's charge carefully and properly pointed out that comments or questions by the court were not to be construed as in any way expressing any opinion or view on the part of the court whatsoever. The charge was not excepted to in any way, and examination of it reveals only fairness and objectivity on the part of the trial judge.

■■ As to the interruptions of defense counsel, it is evident from an inspection of the whole record that counsel invited many of these by overly repetitious and extended cross-examination, questions asked in improper form, or by repetition of a witness's previous answer in putting the next question. We do, however, endorse the A.B.A. Advisory Committee's standards for the rendering of criminal justice:

The trial judge should be the exemplar of dignity and impartiality. He should exercise restraint over his conduct and utterances. He should suppress his personal predilections, and control his temper and emotions. He should not permit any person in the courtroom to embroil him in conflict, and he should otherwise avoid conduct on his part which tends to demean the proceedings or to undermine his authority in the courtroom. When it becomes necessary during the trial for him to comment upon the conduct of witnesses, spectators, counsel, or oth-

---

1. The Court: Let's see now. The brother that was driving, what was his name?
The Witness: Jose Torres.
The Court: The older brother who was sitting some place else, what was his name?
The Witness: Jose D. Torres. We are all named Jose.
The Court: That's part of the problem.

\* \* \* \* \*
The Court: She seems to answer your question without the aid of an interpreter.
Mr. Cardwell: I think she's just a little nervous Your Honor.
The Court: Maybe that's a good way to learn English.

ers, or upon the testimony, he should do so in a firm, dignified and restrained manner, avoiding repartee, limiting his comments and rulings to what is reasonably required for the orderly progress of the trial, and refraining from unnecessary disparagement of persons or issues.

A.B.A. Project on Standards for Criminal Justice, Advisory Committee on the Judge's Function, Standards Relating to the Judge's Role in Dealing with Trial Disruptions, Standard B. 1, at 6 (Advance Rep.Tent.Draft May, 1971). *See, also* United States v. Frascone, 299 F.2d 824, 829 (2d Cir.), cert. denied, 370 U.S. 910, 82 S.Ct. 1257, 8 L.Ed.2d 404 (1962); United States v. Curcio, 279 F. 2d 681, 682 (2d Cir.), cert. denied, 364 U.S. 824, 81 S.Ct. 59, 5 L.Ed.2d 52 (1960). While it would have been preferable for the court in several instances to have exercised greater restraint,[2] it is not as if counsel were lacking in experience at the criminal bar; that is to say, he could well have avoided the repetitiousness that helped to bring on the court's comments. Moreover, on various occasions throughout the record it is evident that the court leaned over backward to make certain that appellants' points were brought out and that even where counsel's questions were obfuscatory the jury would be able to perceive the object of his interrogation.[3]

Appellants denied any responsibility whatsoever for the throwing of two Molotov cocktails or firebombs at a police car in the course of a June 30, 1970, civil disturbance in Hartford, Connecticut; they denied even seeing the firebombs thrown. The two arresting officers who were seated in an unmarked vehicle following the police car at which the firebombs were thrown testified that they never took their eyes off the two defendants from the time when they were first seen throwing the firebombs to the time of arrest a few moments later, on pursuit into a house at the scene. There was plainly sufficient evidence to sustain the convictions for violation of 26 U.S.C. § 5861(d)—possession of an unregistered firearm.

Judgments affirmed.

\*      \*      \*      \*      \*

2. Q. Can I ask you why you didn't check for odor of gasoline on the hands of Mr. Vega?

The Court: Do you want his permission or do you ask the question why?

Mr. Cardwell: I'm asking him.

The Court: You said, "Can I ask you?" Do you want to ask the question why?

Mr. Cardwell: Yes.

The Court: Why did you not check?

\*      \*      \*      \*      \*

Mr. Cardwell: I suppose, Your Honor, that they had—

The Court: Don't suppose. You're entitled to ask questions and he said do you know what all of the people thought that night at all?

\*      \*      \*      \*      \*

The Court: Don't repeat everything he says, counsel. We have a man taking it down with a machine.

Mr. Cardwell: I want to make certain—

The Court: I wonder about what the jury is concerned with. If they can't hear it, they'll let me know.

Q. How far behind the cruiser were you?

A. I'd say fifty to seventy feet.

Q. Fifty to seventy feet. I didn't intend to repeat that, Your Honor.

The Court: Try not to again.

3. *E. g.*:

Q. [Mr. Cardwell] And is it fair to say that if they were going to throw firebombs at the cruiser they would be observing it coming down the street from the north?

Mr. Mac Buckley: Objection, Your Honor. He does not know what they saw.

The Court: I think he did say on direct and on redirect they didn't observe him.

Mr. Mac Buckley: They didn't look at the car?

Mr. Cardwell: Counsel asked him which way they were looking.

The Court: Would you agree with counsel that it was fair to say that they were looking at you?

The Witness: At us or at the cruiser.