**UNITED STATES of America,
Appellee,**

v.

**Richard T. PELLEGRINO and William
Walter Price, Appellants,**

**No. 177, Docket 72-1122.**

United States Court of Appeals,
Second Circuit.

Argued Nov. 2, 1972.

Decided Dec. 14, 1972.

Certiorari Denied April 2, 1973.
See 93 S.Ct 1556.

Raymond W. Ganim, Stratford, Conn., for appellants.

Andrew B. Bowman, Asst. U. S. Atty. (Stewart H. Jones, U. S. Atty., D. Conn., of counsel), for appellee.

Before LUMBARD, FEINBERG and OAKES, Circuit Judges.

OAKES, Circuit Judge:

Following a jury trial appellants were convicted of violating 18 U.S.C. § 2314 for transporting jewelry stolen from a shop in Shelby, North Carolina, to Bridgeport, Connecticut. Their principal contention on this appeal relates to the extent of the district judge's interjections into the conduct of the trial. Cf. United States v. Cruz, 455 F.2d 184 (2d Cir.), cert. denied, 406 U.S. 918, 92 S.Ct. 1769, 32 L.Ed.2d 117 (1972).

Appellants argue that the trial judge's numerous interruptions of their counsel's cross-examination of the principal Government witness, one Saia, prejudiced the jury against them and rendered the cross-examination ineffectual. Many of these interruptions were prompted by the district court's duty as more than a moderator to clarify ambiguous questions and testimony for the jury and to insure that the trial was fairly conducted.[1] United States v. Cur-

---

1. In the cross-examination of Saia defense counsel often asked several questions as one, as in the following exchange:

Q. Mr. Saia, you have testified in your direct testimony you hitch hiked down to Shelby, North Carolina; is that correct?

cio, 279 F.2d 681, 682 (2d Cir.), cert. denied, 364 U.S. 824, 81 S.Ct. 59, 5 L.Ed. 2d 52 (1960); United States v. Brandt, 196 F.2d 653, 655 (2d Cir. 1952). Also, certain of the interruptions were "invited" by counsel's admittedly ambiguous and repetitive questions.[2] United States v. Cruz, *supra,* 455 F.2d at 186. We have stated that restraint is called for on the part of the trial judge to insure that he remain the dignified "personification of our legal system in the eyes of all who are present in his courtroom." United States v. Frascone, 299 F.2d 824, 829 (2d Cir.), cert. denied, 370 U.S. 910, 82 S.Ct. 1257, 8 L.Ed.2d 404 (1962), and that he not "usurp the functions either of the jury or of the representatives of the parties," United States v. De Sisto, 289 F.2d 833, 834 (2d Cir. 1961). We have repeatedly insisted that trial judges display patience with counsel so as not to prejudice a party or create an impression of partisanship before the jury.

■ But here the trial judge, despite a number of interjections, stayed within the limits this court has prescribed. None of the interventions explicitly undercut the appellants' presumptions of innocence, United States v. Brandt, *supra,* 196 F.2d at 656, by implying any belief on the part of the court of appellants' guilt. Indeed, it may be that some of his interventions helped rather than harmed the appellants' position before the jury.[3] Furthermore, the jury

---

A. Yes, sir.

Q. The reason you went to Shelby, North Carolina, was to relocate yourself; is that right?

A. Yes.

Q. You had been having difficulty up here, and you relocated down there; and you had people down there; is that correct?

The Court: Which question do you want to ask? Three of them?

Mr. Ganim: I will separate them.

The Court: All right.

Defense counsel also had difficulty in laying a foundation for impeachment of Saia's credibility by use of prior inconsistent statements. The trial judge properly intervened to insure that the jury was not confused, as in the following exchange:

A. In-laws, yes.

Q. In-laws. How long have your in-laws lived down in Shelby, North Carolina?

A. To my knowledge, all their life.

Q. And you, Mr. Saia, had you been down there previous to this particular weekend in question?

A. Several times, yes. ·

Q. Several times. As a matter of fact, didn't you work down there?

A. Yes, sir, I did.

Q. And was the type of work that you did in the building business?

A. Yes, sir, it was.

Q. I believe somewhere, in one of the statements that you made to—

The Court: No, no. "Did you say such and such?"

2. For example, defense counsel repeated three times the same question about a meeting between Saia and the appellants at a Shelby gas station, inspiring the following exchange after the third question:

Q. But you saw them at the gas station?

The Court: Counsel, please, now. Let's see if we can get out of the gas station.

Mr. Ganim: Your Honor, I'm a little confused. I started to say—

The Court: It's all right. Counsel, be my guest and take as much time as you want. Certainly we don't want *you* confused. Take your time, counselor.

Mr. Ganim: Thank you, Your Honor. While trying to speed the trial along, this exchange, as the one in footnote 1—framed as it was—could have conveyed to the jury the impression the court had a low opinion of defense counsel's competence.

3. For example, the trial court's examination in the following exchange cut both ways:

*By Mr. Ganim:*

Q. Didn't you have a discussion with them concerning the fact that, as far as they were concerned, they wanted no part of breaking and entering into this jewelry store which you invited them down to see?

Mr. McGunnigle: Objection for the last part of the question.

The Court: I will allow it.

*By the Court:*

Q. Is that a fact?

A. There was no discussion.

Q. Did you invite them down to look at it?

A. No, sir. There was never any discussion.

charge properly pointed out that the court's interventions were for purposes of clarification only, a factor that to some extent mitigates any impression created by the trial court's interruptions. United States v. Cruz, *supra*, 455 F.2d at 185; United States v. Frascone, *supra*, 299 F.2d at 829.

Moreover, the evidence of appellants' guilt, the sufficiency of which is not contested here, was overwhelming. Even exclusive of Saia's testimony, evidence, much of it drawn from appellant Price's own testimony, establishes appellants' presence in Shelby on the day of the crime; their intention to commit a robbery; that large amounts of jewelry were seen in appellant Pellegrino's apartment; and that appellants, with large sums paid in cash, purchased expensive cars shortly after their return from their southern escapades. Under the circumstances we cannot say that the interventions of the trial judge were such "plain error," Fed.R.Crim.P. 52(b), as to require a new trial.

 Appellants also argue that it was error for the trial court to refuse to order the sequestration of the FBI agent in charge of the case who sat at the prosecution table throughout the trial and was the last witness called by the Government. Since the chief investigating agent may be of significant help to the prosecution during the course of a trial, the trial court has discretion to make an exception to the general rule of sequestration of witnesses in his case. United States v. Wells, 437 F.2d 1144, 1146 (6th Cir. 1971); United States v. Frazier, 417 F.2d 1138, 1139 (4th Cir. 1969), cert. denied, 397 U.S. 1013, 90 S. Ct. 1245, 25 L.Ed.2d 427 (1970). No showing of prejudice flowing from the order of Government's proof is made by appellants. Furthermore, before the agent began his testimony the court properly pointed out to the jury that the witness had heard all the previous evidence while seated at the counsel table. Under the circumstances the trial judge did not abuse his discretion in refusing sequestration and allowing the agent to testify at the end of the Government's case.

 Appellants next contend that the trial court erred in answering affirmatively without further inquiry a "legal question" posed by the jury as to whether the phrase "cause to be transported" could be substituted for the phrase "did transport" in the indictment

---

*By Mr. Ganim:*

Q. You never at any time, ever mentioned the jewelry store down there as easy pickin's, or any other piece of property down there or building or business; is that correct?

A. Yes, sir. That is correct.

*By the Court:*

Q. Let me ask you quite frankly. Did you rob the store at all?

A. No, sir. I didn't.

Q. You didn't?

A. I was supposed to be the fall guy.

Q. You had nothing to do with the robbery of the store?

A. No, sir. I did not.

Q. All right. You say you were supposed to be the fall guy. Was that pursuant to some talk you had with the defendants?

A. This was afterwards.

Q. Afterwards?

A. Yes.

Mr. Ganim: Well, may I continue on that note, your Honor?

*By Mr. Ganim:*

Q. What do you mean by a fall guy?

The Court: I thought that might have been your opening note, when you told the jury before.

*By Mr. Ganim:*

Q. What do you mean, you were the fall guy?

A. I have been convicted of three felonies. I have a record. I did show up in town and the store is robbed. I'm the most likely suspect. And this is what was pointed out to me.

Q. That was pointed out to you?

A. Yes.

Q. You are aware of the fact that both Pellegrino and Price have records, don't they?

On the other hand, this exchange may well have strengthened Saia's credibility, a principal issue at trial, in the eyes of the jury since the question as to his participation was posed by the judge.

charging the appellants with violation of § 2314. Appellants apparently argue that an affirmative answer implied that appellants could be found guilty solely of aiding and abetting the § 2314 violation when they were not charged with aiding and abetting in the indictment and the only crime proved by the Government was the substantive violation. This argument ignores the fact that by virtue of 18 U.S.C. § 2(b),[4] § 2314 incorporates the phrase "cause to be transported," *see* Pereira v. United States, 347 U.S. 1, 8, 74 S.Ct. 358, 98 L.Ed. 435 (1954); thus the indictment in effect charged appellants with causing the stolen jewelry to be transported in interstate commerce. Furthermore, a defendant may be indicted for the commission of a substantive offense and convicted solely as an aider and abettor even though not named as such in the indictment. United States v. Tropiano, 418 F.2d 1069, 1083 (2d Cir. 1969), cert. denied sub nom., Grasso v. United States, 397 U.S. 1021, 90 S.Ct. 1258, 25 L.Ed.2d 530 (1970). *Accord,* United States v. Harvey, 439 F.2d 142, 143 (3rd Cir.), cert. denied, 403 U.S. 934, 91 S.Ct. 2264, 29 L.Ed.2d 713 (1971); United States v. Weisscredit Banca Commerciale E D'Investimenti, 325 F.Supp. 1384, 1395 (S.D.N.Y.1971). Additionally, there was substantial evidence from which the jury could have found that even if the crime were committed by Saia, as appellants contended at trial, appellants associated themselves with the venture, sought to make it successful and thus were *guilty of aiding and abetting.* United States v. Curiale, 414 F.2d 744, 748 (2d Cir.), cert. denied, 396 U.S. 959, 90 S.Ct. 433, 24 L.Ed.2d 424 (1969). Finally, appellants failed to ob-

ject to the judge's answer to the question posed by the jury and since the answer was not "plain error" they are precluded from raising the objection here. *See* Ramey v. United States, 118 U.S. App.D.C. 365, 336 F.2d 743, 744–745, cert. denied, 379 U.S. 840, 85 S.Ct. 79, 13 L.Ed.2d 47 (1964).

Lastly, appellants contend that their motion for a new trial based on newly discovered evidence was erroneously denied by the district court. It is well settled that appellate deference is given, however, to the denial of the motion by the judge who heard all the evidence during the trial. *E.g.,* Connelly v. United States, 271 F.2d 333, 334 (8th Cir. 1959), cert. denied sub. nom., Caudle v. United States, 362 U.S. 936, 80 S. Ct. 755, 4 L.Ed.2d 750 (1960); United States v. Troche, 213 F.2d 401, 403 (2d Cir. 1954). The district court's denial here was far from an abuse of discretion. One of the affidavits submitted with the motion for a new trial was merely cumulative. And the information in it could have been discovered by the exercise of due diligence on the part of appellants since they had ample contact with the affiant prior to trial. *See* United States v. Bradwell, 295 F.Supp. 958, 959–960 (D.Conn.) aff'd, 388 F.2d 619 (2d Cir.), cert. denied, 393 U.S. 867, 89 S.Ct. 152, 21 L.Ed.2d 135 (1968). The other affidavit, which contains an allegation that the witness Saia was lying, merely bears on Saia's credibility; it does not, in and of itself, furnish adequate grounds to merit a new trial. United States v. Curry, 358 F.2d 904, 919 (2d Cir.), cert. denied, 385 U.S. 873, 87 S.Ct. 147, 17 L. Ed.2d 100 (1966).

Affirmed.

4. This statute provides in pertinent part:
(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.