UNITED STATES of America,
Appellee,

v.

Michael NEWMAN, Defendant-
Appellant.

No. 677, Docket 72–2407.

United States Court of Appeals,
Second Circuit.

Argued March 14, 1973.

Decided July 2, 1973.

Joel A. Brenner, Mineola, N. Y., for defendant-appellant.

Kenneth R. Feinberg, Asst. U. S. Atty. (Whitney North Seymour, Jr., U. S. Atty., S. D. N. Y., and John W. Nields, Jr., Asst. U. S. Atty., of counsel), for appellee.

Before HAYS, MULLIGAN and OAKES, Circuit Judges.

PER CURIAM:

This appeal is from a judgment of conviction on a jury verdict of guilty on

charges of possessing counterfeit currency, 18 U.S.C. §§ 472 and 2, and conspiring to possess and deal in such, 18 U.S.C. § 371. The sentence on this second trial of appellant was as a youthful offender, under 18 U.S.C. § 5010(a), to a five-year period of probation. Appellant claims that the trial judge, Hon. Charles M. Metzner, should have disqualified himself and by his conduct denied appellant a fair trial; that certain rebuttal testimony was improperly admitted; and that the court erred in failing to charge the jury on the question whether the proof established multiple conspiracies. We affirm.

█ Appellant argues not that the trial judge was personally biased or prejudiced, but that under United States v. Bryan, 393 F.2d 90, 91 (2d Cir. 1968) (per curiam), a criminal case should ordinarily be retried before a different trial judge. Here this is especially true, the argument runs, because at the end of the first trial while the jury was deliberating Judge Metzner indicated his belief in the defendant's guilt by saying, "Obviously there are three people on the jury who aren't going to convict that defendant because he is twenty years old." But the appellant cannot have it both ways. The single remark does not rise to the level of obliging the judge to recuse himself; appellant is aware of this and accordingly did not urge below or here that the judge was biased. Our review of the record, discussed below, makes it evident that even a "suspicion of partiality," 393 F.2d at 91, could not be raised by Judge Metzner's conduct of this case. Furthermore, the court in Bryan was speaking of reassignment as the "wiser practice" in retrials of "lengthy criminal cases," 393 F.2d at 91, not setting down a requirement in every case. See also Wolfson v. Palmieri, 396 F.2d 121, 126 (2d Cir. 1968) (per curiam) (Bryan [cited as United States v. Simon] limited to "particular facts" there presented). Here there was involved the retrial of a case consuming only four days at the first trial. More importantly, a date of September 21 for the retrial was set at the time the first trial ended in a hung jury in May of 1972, and it was only a few minutes before the start of the second trial when appellant's counsel first invoked Bryan. This delay in making the motion to disqualify alone justified its denial.

█ Appellant argues that the judge intruded himself sufficiently into the trial to warrant reversal under United States v. Nazzaro, 472 F.2d 302 (2d Cir. 1973). Examination of the transcript reveals, however that Nazzaro and this case are two different kettles of fish. It is true that from time to time the trial judge interrogated witnesses, generally to clarify testimony, or had a few exchanges with counsel, generally following an inept question or inappropriate comment. See United States v. Pellegrino, 470 F.2d 1205, 1207 (2d Cir. 1972), cert. denied, 411 U.S. 918, 93 S.Ct. 1556, 36 L.Ed.2d 310 (1973), and United States v. Cruz, 455 F.2d 184, 185 (2d Cir.), cert. denied, 406 U.S. 918, 92 S.Ct. 1769, 32 L.Ed.2d 117 (1972). But the only instance even approaching error was in connection with the court's interrogation of the appellant himself relative to a counterfeit ten dollar bill that appellant said was given him in his car by one Farnsworth. Appellant handed the bill to a gas station attendant at Massapequa, Long Island, who in turn gave it back to Newman because the bill "didn't look too good." Newman took the bill back and at trial was quite evasive as to why he took it back and whether he thought the bill was counterfeit; he denied that he had any conversation with Farnsworth (who was with him at the gas station) about the bill and the fact that it might have been "phony." Appellant was in the dilemma that if the bill were counterfeit his friend, Farnsworth, would have been "out ten dollars." To challenge his denial of having talked at all about the bill, the prosecutor asked a further question as to whether Newman and Farnsworth hadn't even talked about being out ten dollars. Appellant said, "That's why Jay [Farnsworth] wondered why he [the gas station attendant] didn't accept it." The

court interjected: "That's all the conversation? Ten dollars dropped from heaven? Next question." The comment in the form of a question was probably not inappropriate in view of appellant's evasiveness, but in any event no objection was taken to it at the time, and the court subsequently cautioned the jury that its comments or questions were not in any way to be construed as expressing any opinion or view as to appellant's guilt or innocence. United States v. Boatner, 478 F.2d 737 (2d Cir., 1973); United States v. Cruz, *supra*, 455 F.2d at 185; United States v. D'Anna, 450 F.2d 1201, 1206–1207 (2d Cir. 1971). While curative comments must be taken with a grain of salt, in the light of the record, we cannot say that there was plain error here; this particular passage does not alone, or in cumulation with the other conduct of the trial judge, in any way indicate that appellant was denied a fair trial. We find appellant's claim to the contrary to be "without merit or substance." *See* United States v. Nazzaro, *supra*, 472 F.2d at 303.

■ Proving that the coincidences of life are remarkable indeed, the Government called in rebuttal an investigator with the same name as the appellant, Michael Newman. Appellant argues that the rebuttal was improper because it was not in answer to appellant's direct case, but rather contradicted appellant's answer given in cross-examination. *See* 6 J. Wigmore, Evidence § 1873

(3rd ed. 1940). But investigator Newman's testimony in rebuttal was to the effect that appellant Newman told him appellant had a conversation with one Jack Martin and an undercover agent going under the name of "Sonny Fletcher" during which counterfeit money was discussed. Previously, in his *direct* testimony appellant had testified that while a discussion took place it had to do with trouble with a car—"nothing more than that"—and that he and Martin had had no discussion with reference to getting counterfeit bills "or anything." As such, the rebuttal testimony was proper, since it rebutted appellant's direct case. United States v. Keilly, 445 F.2d 1285, 1289 (2d Cir. 1971), cert. denied, 406 U.S. 962, 92 S.Ct. 2064, 32 L.Ed.2d 350 (1972).

■ A "multiple conspiracy" charge was never requested, nor was any objection taken to the court's charge on conspiracy. Moreover, while there were different times at which the counterfeit money was allegedly passed, there was evidence of one acquisition of counterfeit with intent to dispose of a substantial part of it in Florida, and while "Fletcher" may not have been a member of the conspiracy in the first instance, there was evidence that the appellant was. Thus, the jury could properly find the single conspiracy charged. United States v. Calabro, 449 F.2d 885, 892–894 (2d Cir. 1971), cert. denied, 404 U.S. 1047, 92 S.Ct. 728, 30 L.Ed.2d 735 (1972).

Judgment affirmed.