**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Joe WALKER and Iverson Broadway,
a/k/a Skeet, Defendants-Appellants.**

No. 79–5233
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

March 20, 1980.

---

* Fed.R.App.P. 34(a); 5th Cir. R. 18.

Maurice T. Hattier, Asst. Federal Public Defender, New Orleans, La., Patrick C.

McGinity (Court-appointed), New Orleans, La., for Broadway.

John P. Volz, U. S. Atty., Harry W. McSherry, Jr., Asst. U. S. Atty., New Orleans, La., for plaintiff-appellee.

Before GODBOLD, REAVLEY and ANDERSON, Circuit Judges.

R. LANIER ANDERSON, III, Circuit Judge:

Appellants Iverson Broadway and Joe Walker, together with co-defendant Robert Lee Jones, were convicted by a jury of conspiracy to possess with the intent to distribute heroin, of knowing and intentional possession of heroin with intent to distribute, and of aiding and abetting the knowing and intentional possession of heroin with intent to distribute.[1] 21 U.S.C. § 841(a)(1) and § 846, and 18 U.S.C. § 2. Broadway and Walker bring this appeal alleging several errors in the conduct of the trial and in the trial court's denial of their motion for judgment of acquittal for insufficiency of the evidence.[2] We affirm their convictions.

## I. Sufficiency of the Evidence

Both appellants contend that the trial court erred in denying their motions for judgment of acquittal, see Fed.R.Crim.P. 29(a), on the grounds that the government did not present substantial evidence that they each had knowingly and intentionally conspired to possess with intent to distribute heroin. Appellants' only contention is

---

1. The conspiracy allegedly began on or about July 1, 1976, and continued until on or about March, 1978. Broadway, Walker and Jones were convicted of one count of conspiracy. Broadway was convicted of three counts of knowing and intentional possession with intent to distribute on three occasions from December, 1977, through March, 1978, and of aiding and abetting on these occasions. Walker was convicted of one count of knowing and intentional possession with intent to distribute on or about July, 1976, and with aiding and abetting on this occasion. Jones was convicted of five counts of knowing and intentional possession with intent to distribute, and with aiding and abetting on these occasions.

2. Co-defendant Jones has not appealed his conviction.

that the evidence supporting the government's case is the testimony of convicted felons or prostitutes who had been granted immunity. They maintain that testimony from such witnesses who had much to gain through cooperating with the government cannot rise to the level of substantial evidence supporting the government's case.

The appellants have failed to read closely *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942) which gives us the oft-quoted standard that in determining the sufficiency of the evidence it is not for the court to weigh the evidence or to determine the credibility of the witnesses. Instead, the court is to view the evidence in the light most favorable to the government. 315 U.S. at 80, 62 S.Ct. at 469.[3] In *Glasser*, one defendant attacked the sufficiency of the evidence against him on the grounds that the testimony against him was largely that of accomplices and unsavory characters. The Supreme Court dismissed this argument with the short reply that the credibility of a witness is a question for the jury. 315 U.S. at 77, 62 S.Ct. at 468. The same reply is a conclusive response to appellants' argument in this case.

## II.  Testimony of Deborah Mayhue.

█ Both Walker and Broadway claim as prejudicial error the admission of witness Deborah Mayhue's statement on re-direct by the government that she was working for Walker as a prostitute. The appellants argue that this was evidence of another crime by Walker, was prejudicial and not probative of guilt or innocence, and was therefore improperly admitted.[4]

During the cross-examination of Mayhue, the attorney for Jones asked Mayhue what she did for a living, to which Mayhue replied that she was a prostitute. Walker's attorney, on further cross-examination without objection from the other defendants, elicited from Mayhue that she was a prostitute before she moved to New Orleans in 1976 or 1977 and began living with Walker. Apparently trying to build a defense that it was Mayhue instead of Walker who was selling drugs, Walker's attorney asked her what she was selling on the streets, to which Mayhue replied that she was selling her body and giving the money to Walker. Walker's attorney persisted in this defense, hoping to establish that it was Mayhue and not Walker who purchased drugs from Jones. He asked Mayhue whether she ever asked Walker to purchase her drugs, to which she replied no. When asked again whether her money went to drugs, Mayhue replied yes, bolstering Walker's claim that it was Mayhue that purchased drugs from Jones. Walker continued this defense when he took the stand, testifying that he never bought drugs but that Mayhue brought drugs home with her.

On re-direct, the government asked Mayhue who her "pimp" was, to which Walker's attorney objected. The court sustained the objection on grounds that it assumed a fact not shown, but made clear that it would permit the government to question Mayhue further concerning her prostitution. The government then asked Mayhue if she was working for Walker as a prostitute, to which Mayhue replied yes. The government then went into a line of questioning which established that Mayhue would make

---

**3.** This test was most recently repeated in *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978). See also *United States v. Malatesta*, 590 F.2d 1379 (5th Cir.) (en banc), *cert. denied*, 440 U.S. 962, 99 S.Ct. 1508, 59 L.Ed.2d 777 (1979); *United States v. Harbin*, 601 F.2d 773 (5th Cir. 1979).

**4.** Appellant Broadway does not explain how the evidence elicited by the government was prejudicial to Broadway's case. Presumably he is relying upon some "spill over" theory.

Broadway made no objection to the initiation of this line of questioning by his fellow defendants, made no motion to sever, and made no request for special limiting instructions to the jury. As we explain below in footnote 5, the prejudicial impact with respect to Walker is slight, if at all, in light of the testimony elicited by the defense in cross-examination of Mayhue. Any prejudicial impact with respect to Broadway would be even less.

from one to two hundred dollars a night which would be given to Walker.

■ It was defendants who on cross-examination elicited the testimony concerning Walker's connection with Mayhue's prostitution and the role it played in the purchase of drugs. Cross-examination with respect to part of a transaction enables the opposing party to elicit evidence on re-direct examination of the whole transaction at least to the extent that it relates to the same subject. *United States v. Barrentine,* 591 F.2d 1069, 1081–2 (5th Cir. 1979). Because the defendants opened the door to this line of questioning, the government's questions on redirect were permissible. Cf.

5. Even if the government's re-direct went beyond the testimony elicited by the appellants in showing Walker's complicity in Mayhue's prostitution, such re-direct was still admissible. It was limited to the subject matter of the cross-examination. Cf. Fed.R.Evid. 611(b). Furthermore, the two-step test this Circuit promulgated in *United States v. Beechum,* 582 F.2d 898 (5th Cir. 1978) (en banc), *cert. denied,* 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979) to determine admissibility of evidence of extrinsic offenses is met. The test established there is that (1) it must be determined that the extrinsic offense evidence is relevant to an issue other than the defendant's character and (2) the evidence must possess probative value that is not substantially outweighed by its undue prejudice and must meet the other requirements of Fed.R.Evid. 403. 582 F.2d at 911.

The first step of the test is met in that who was receiving the money from Mayhue's prostitution was relevant to the issue of who was purchasing drugs from Jones. Walker's attorney in questioning Mayhue may have raised doubt in the jury's mind as to where the money from her prostitution was going. It was incumbent upon the government on re-direct to make clear that the money Mayhue earned went to Walker who in turn purchased the drugs. That Mayhue was working for Walker as a prostitute would indicate that Walker had control over her earnings and could utilize them to purchase drugs.

The second step of the test is met because the prejudicial impact of the government's questions would be slight at best, since Walker's attorney had elicited the fact that Mayhue was a prostitute who was living with Walker and was giving her money to Walker. While the government's questions elicited testimony which unequivocally indicated Walker's participation in Mayhue's prostitution, it is beyond common sense to suppose that most jurors did

*Alvarez v. Wainwright,* 607 F.2d 683 (5th Cir. 1979).[5]

### III. Limitation of Cross-examination Concerning Hayes' Conviction for Prostitution.

■ Both appellants claim the trial court erred in preventing defense attorneys from attacking witness Lynne Hayes' credibility with the fact of her prior conviction in 1975 for prostitution.

In Louisiana the first conviction for prostitution is a misdemeanor.[6] Under Rule 609(a) of the Federal Rules of Evidence,[7] if a prior conviction was not punishable by

not already suspect such complicity or were not already affected by Walker's proximity to the unsavory business on the basis of the cross-examination testimony. Because the prejudicial impact of the evidence elicited by the government was slight, the probative value of the re-direct examination in rebutting a possible defense clearly outweighs any prejudicial impact. Accordingly, the testimony was properly admitted.

6. La.Rev.Stat.Ann. § 14:82 (West) reads in pertinent part:

"... Whoever commits the crime of prostitution shall be fined not more than five hundred dollars or be imprisoned for not more than six months, or both.

On a second conviction, the offender shall be fined not less than two hundred fifty dollars nor more than two thousand dollars or be imprisoned, with or without hard labor, for not more than two years, or both.

On a third and subsequent conviction the offender shall be imprisoned, with or without hard labor, for not less than two nor more than four years and shall be fined not less than five hundred dollars nor more than four thousand dollars."

7. Rule 609(a) of the Federal Rules of Evidence reads:

"(a) General rule. For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross-examination but only if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the defendant, or (2) involved dishonesty or false statement, regardless of the punishment."

death or by imprisonment in excess of one year, the conviction is admissible only if the crime involved dishonesty or false statement.

The Conference Committee Notes concerning Rule 609(a) make clear the phrase "dishonesty and false statement" means:

> crimes such as perjury or subornation of perjury, false statement, criminal fraud, embezzlement, or false pretense, or any other offense in the nature of crimen falsi, the commission of which involves some element of deceit, untruthfulness, or falsification bearing on the accused's propensity to testify truthfully.[8]

■ *United States v. Cox*, 536 F.2d 65 (5th Cir. 1976) noted that under the broad moral turpitude standard employed in this Circuit prior to the new Federal Rules of Evidence, a prostitution conviction may not have been *per se* inadmissible, 536 F.2d at 70–71, but also suggested in dictum that it would not be admissible under Rule 609(a). The Eighth Circuit, having an opportunity to face this question squarely, has held that a misdemeanor conviction for prostitution is not admissible under 609(a). *United States v. Wright*, 564 F.2d 785, 791 (8th Cir. 1977). We similarly hold that a conviction for prostitution does not involve dishonesty or false statement and is not admissible under 609(a) for impeachment purposes. The trial court committed no error in refusing to admit Hayes' prior conviction.

IV.  Violation of Sequestration Order.

■ Appellant Broadway argues that the trial court abused its discretion in denying a mistrial because of case agent Joe Molyneux's violation of the sequestration order.

Molyneux is an agent for the Drug Enforcement Agency who investigated the case on appeal. Before the government presented any witnesses as part of its case in chief, the trial court ordered sequestration of the witnesses at the request of the defendants. The trial court, however, permitted Molyneux to remain at the government's table to assist the prosecution.[9] During a short recess while Annette Winbon was on the stand, Molyneux, at the direction of government counsel, approached Winbon while she was still seated on the stand and showed her certain documents. Molyneux was attempting to ascertain whom the government needed to subpoena in order to identify the documents. Winbon had not been asked questions about the documents before Molyneux approached her nor was she subsequently questioned about the documents.

■ Allowing the DEA agent in charge of the case to remain at the prosecutor's table during the course of the trial was permissible since he could be of significant help to the prosecution. *United States v. Pellegrino*, 470 F.2d 1205 (2d Cir. 1972), *cert. denied*, 411 U.S. 918, 93 S.Ct. 1556, 36 L.Ed.2d 310 (1973); *United States v. Mallis*, 467 F.2d 567 (3d Cir. 1972).[10] Sequestration requires that witnesses not discuss the case among themselves or anyone else, other than the counsel for the parties. See *Gregory v. United States*, 125 U.S.App.D.C. 140, 369 F.2d 185 (D.C.Cir. 1966), *cert. denied*, 396 U.S. 865, 90 S.Ct. 143, 24 L.Ed.2d 119 (1969); 2 Wright, *Fed. Practice and Procedure: Criminal*, § 415. Since Molyneux did not testify after sequestration was invoked and since he was acting as agent for the

---

**8.** H.R.Conf.Rep. No. 93–1597, 93d Cong.2d Sess. 9, reprinted in 1974 U.S.Code Cong. & Admin.News, pp. 7098, 7103.

**9.** Molyneux did testify in a pre-trial proceeding concerning a tape recording made during the investigation. His testimony occurred before the invocation of sequestration and he did not subsequently testify.

**10.** Where an investigatory agent sits at the prosecutor's table when sequestration has been invoked, some courts have recommended safeguards be taken if that agent testifies. See *Pellegrino, supra*, (special instructions to jury); *United States v. Escobedo*, 430 F.2d 603 (7th Cir. 1970), *cert. denied*, 402 U.S. 951, 91 S.Ct. 1632, 29 L.Ed.2d 122 (1971) (having agent testify first).

prosecution, we find that there was no violation of the sequestration order.[11]

### V. Improper Closing Argument

Appellant Broadway maintains that on two occasions the government counsel improperly expressed his opinion that there was sufficient evidence to warrant a guilty verdict by the jury. We find no merit in this contention. In the first instance complained of, we can discern no expression of opinion at all. The second instance involved the prosecutor's summary of the government witnesses' testimony to the effect that the substance being sold was heroin. The government had to rely on these witnesses to prove the substance was heroin since it had not seized the substance and had no expert testimony concerning its chemical composition. In arguing that this testimony was sufficient to show beyond a reasonable doubt that the substance being packaged and sold was heroin, the prosecutor parenthetically remarked "we think that that is enough." There was no objection to this opinion.

It is clear that an attorney may not express his personal opinion as to the credibility of witnesses, or his own belief regarding a defendant's guilt. *United States v. Alanis*, 611 F.2d 123 (5th Cir. 1980); *U. S. v. Morris*, 568 F.2d 396 (5th Cir. 1978). There being no objection to this remark, we hold that it does not rise to the level of plain error.[12]

Broadway also asserts as improper and inflammatory the government's use of an analogy to the effect that the failure of the government to produce a weapon in a trial for armed robbery does not preclude conviction when witnesses saw the weapon. Broadway raised timely objection to this analogy, but we find nothing improper about it. It was a permissible means by which the government illustrated graphically a permissible inference the jury could make from the testimony in evidence. See *United States v. Fulton*, 549 F.2d 1325, 1328 (9th Cir. 1977). The analogy contained no inflammatory comparisons to other notorious and well-known crimes as in *United States v. Phillips*, 155 U.S.App.D.C. 93, 476 F.2d 538 (D.C.Cir. 1973), nor did it refer to the defendants in any derogatory manner. See *United States v. Windom*, 510 F.2d 989 (5th Cir.), *cert. denied*, 423 U.S. 863, 96 S.Ct. 121, 46 L.Ed.2d 91 (1975).

AFFIRMED.

---

11. In this context, it must be remembered that failure of a witness to comply with the sequestration rule does not of itself render his testimony inadmissible, although it may affect the weight of the testimony. Whether such a witness is to be permitted to testify is generally left to the sound discretion of the trial court. *United States v. Suarez*, 487 F.2d 236 (5th Cir. 1973), *cert. denied*, 415 U.S. 981, 94 S.Ct. 1572, 39 L.Ed.2d 878 (1974); *Holder v. United States*, 150 U.S. 91, 14 S.Ct. 10, 37 L.Ed. 1010 (1893).

12. Even if we were not to apply the plain error rule, we would find no reversible error. The closing argument by the government was otherwise devoid of expression of opinion. Were we to hold the mere parenthetical "we think" to be reversible error, then scores of closing arguments would be grounds for reversal. The opinion expressed here is not as prejudicial as that in *Thompson v. United States*, 272 F.2d 919 (5th Cir.), *cert. denied*, 362 U.S. 940, 80 S.Ct. 805, 4 L.Ed.2d 769 (1960) which we held not to be reversible error. In *Thompson*, the prosecutor stated: "I have put a lot of time in this case. I have worked hard on it, but even so I sincerely ask you to go out and render what you consider a proper verdict. I'll be frank with you, I think the verdict is guilty on all three counts." A major consideration for our decision in *Thompson* was the fact that the prosecutor did not allude to evidence not admitted in expressing his opinion, a fact present in this case.